464 P.2d 960

**STATE of Arizona, Appellee,**

v.

**Lyle C. HANSEN, Appellant.**

**No. 1886.**

Supreme Court of Arizona, In Division.

Feb. 13, 1970.

Gary K. Nelson, Atty. Gen., by Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

Sternberg & Rubin, by Ronald L. Rubin, Phoenix, for appellant.

HAYS, Justice.

Defendant-Appellant Lyle Hansen is stone deaf. On May 10, 1967, he stole approximately $300 from one Raymond Brown in the parking lot at Jerry's Place, a bar located in Glendale. The following day a warrant was sworn out for Hansen's arrest, charging him with robbery in violation of A.R.S. §§ 13–641 and 13–643.

Defendant was ultimately apprehended, and on August 15, 1967, a preliminary hearing on the robbery charge was held in the Glendale Justice Court. Hansen was represented during these proceedings by an attorney of the Maricopa County Public Defender's Office. The State offered incriminating testimony, but the defense presented no case. A court reporter was present at the preliminary hearing, but no transcript of the proceedings was ever made a part of the case record.

After the hearing, defendant was bound over to the Superior Court, and on August 23, 1967, a written information was filed accusing Hansen of robbery. Hansen, then represented by another deputy public ·defender, was arraigned a week later, and pled not guilty to the charge. In discussing the circumstances of the case with Hansen, defendant's attorney apparently felt that the State would not be able 'to prove all the elements of a robbery offense, but that some other charge might be provable. The State's analysis of the case was similar, for on October 10, 1967, the information was amended to charge ·Hansen with grand theft, A.R.S. §§ 13–661 and 13–663.

Arraignment on the amended complaint was held on October 10, 1967. After an extensive interrogation of defendant by the trial judge, the court accepted defendant's plea of guilty to grand theft. Sentencing was set for November 6, 1967, at which time defendant was sentenced to a period of incarceration at the state prison of not less than 7 nor more than 10 years. Defendant's subsequent motion to file a delayed appeal was eventually granted by this Court.

Defendant's appeal is based entirely on his total impairment of hearing. He contends that (1) he never completely understood the nature and consequences of his guilty plea and that therefore his plea was not entered knowingly, voluntarily and intelligently as required by the 14th amendment to the U.S. Constitution, and (2) that he never understood the adverse testimony offered by the State's witnesses at the preliminary hearing, and was therefore unable to assist in his own defense. In order to facilitate defendant's motion for a delayed appeal, we ordered the Superior Court to hold a hearing concerning the above issues. The transcript of that hearing, as well as the transcript of the proceedings concerning defendant's arraignment and plea of guilty, are our primary sources for the consideration of defendant's contentions on appeal.

At the time defendant entered his plea of guilty, defense counsel made known to the trial court that defendant was deaf and had a difficult time understanding. Hansen was fairly adept at reading lips. Prior to the Court's acceptance of the guilty plea, the following transpired:

"BY MR. FRANCONE (Deputy Public Defender): Mr. Hanson (sic) has indicated to me at this time that he would like to plead guilty to the amended information charging grand theft.

It that right Mr. Hanson (sic)?

MR. HANSON: · (sic) Yes, · sir.

THE COURT: Do you understand what the attorney says?

MR. HANSON: (sic) He told me that before what would happen.

THE COURT: You are Lyle Hanson (sic)? You are Lyle Hanson (sic)?

You can't hear me at all? Can't you hear me?

MR. HANSON: (sic) No. I can read your lips sometimes, but not all of the time.

Q. BY THE COURT: What is your name?

A. My name is Lyle Hanson. (Sic)

Q. How old are you?

A. 43.

Q. How far did you go in school?

A. How what?

Q. How far did you go in school?

A. I went to high school. I went to high school, regular high school.

Q. Do you understand by the amended information that you are charged with the crime of grand theft?

A. What?

Q. Do you understand that you are charged with the crime of grand theft

A. Yes, sir.

Q. That it is a felony?

A. Yes, sir.

Q. Is it your desire to plead guilty to this crime?

A. What?

Q. Is is your desire to enter a plea of guilty to this crime?

A. I want to plead guilty? That is what you said?

Q. Yes.

A. Yes, sir.

Q. You understand what may happen as a result of this plea?

A. Do I understand what will happen?

Q. Yes. What might happen as a result of this plea.

A. Yes, sir. Yes, sir.

Q. Do you understand that the Court could send you to the Arizona State Prison for up to ten years on this matter?

A. Do I understand?

Q. Do you understand that the Court could sentence you to the Arizona State Prison for up to ten years?

A. Do I understand I am liable to get ten years?

Q. I said the Court could.

A. Yes, sir.

Q. Do you understand that?

A. Yes, sir.

Q. Also, that the Court could place you on probation?

A. What?

Q. That the Court could place you on probation?

A. Probation?

Q. The Court would investigate it, and could sentence you to prison or place you on probation, do you understand that?

A. Well, the way I understand I can tell the probation officer everything about what happened, is that right?

Q. Yes.

A. Yes, sir.

Q. Are you entering this plea of your own free will?

A. Just of my own free will?

Q. Yes.

A. Well, yes, sir.

Q. Have any promises been made to you of leniency by entering this plea?

A. I don't understand none of that.

Q. Did anybody offer you leniency to get you to enter this plea?

Do you understand what leniency means?

A. I understand. Yes. Yes.

Q. Did anyone make you any offers to get you to enter this plea?

A. What?

. Q. Were any offers made to you of leniency to get you to enter this plea?

A. I didn't understand again. I guess it is all right, though.

Q. Were any threats made to you?

A. What?

Q. Any threats made to you to get you to enter this plea?

A. No. Nobody threatened me.

Q. It is your desire to enter a plea of guilty to the crime of grand theft, a felony, is that correct?

A. What?

Q. It is your desire to enter a plea of guilty to grand theft?

A. I plead guilty to grand theft.

Q. Is that correct?

A. Yes, sir.

Q. Do you have any further questions that you wish to ask about the matter? Is there anything further that you would like to ask the Court or your attorney or the County Attorney about this matter?

A. No.

THE COURT: Mr. Francone, did you fully explain all of this previously to him?

MR. FRANCONE: Yes, your Honor. Mr. Hyder talked to him, and I talked to him on two occasions.

THE COURT: Are you sure he understood?

MR. FRANCONE: I think he understands what he is doing. There is some question about him being able to tell his story to the probation officer. His story is not in line with the original charge, but I believe it is in line with the amended information.

MR. HANSON: (sic) I never had a chance to tell nobody all the way through. I would like to see that probation officer. Could I tell him, is that right?

THE COURT: That is correct.

MR. HANSON: (sic) I wonder if I could see him pretty soon?

THE COURT: You wouldn't be able to see him until after you entered your plea of guilty.

MR. HANSON: (sic) He comes back to see you?

THE COURT: He just advises me as to the matter of sentencing, as to whether or not you should go to the State Prison or whether you should be placed on probation. That is all he does.

But now is the time of whether or not you enter a plea of guilty. You are entitle to a trial if you want it.

Q. Do you want a trial?

A. What.

Q. Do you want to go to trial on this matter?

A. I mean I pled guilty. That is about it, is that right?

THE COURT: I haven't accepted it yet.

MR. HANSON: (sic) I guess that is all.

Q. BY THE COURT: Do you understand what you are doing?

A. Yes, most of it, yes.

THE COURT: I will accept it at this time, and I will have him talk to the probation officer. Then I will reappraise it after that.

The Court finds that the defendant's request to withdraw his plea of not guilty and to enter his plea of guilty to the amended information charging grand theft, a felony, is made knowingly, voluntarily, and intelligently, and that the plea of guilty to the crime of grand theft, a felony, as charged in the amended information, is entered of record."

██ The preceding transcribed testimony indicates to us that defendant's plea of guilty to grand theft was knowingly, voluntarily and intelligently made. Hansen was asked if he understood the nature of the charge against him to which he replied in the affirmative. He also answered that he had discussed the matter of a guilty

plea with his attorney, that he was aware of the range between the maximum and minimum sentence which he could receive, that there were no threats made to induce a plea, that he didn't want to go to trial on the matter, and that the plea was made of his own free will. The court's interrogation, and the answers elicited from defendant, are substantially the same as those approved of in State v. Jennings, 104 Ariz. 3, 448 P.2d 59 (1968), and in our view are consistent with the standards set forth in Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). We hold, therefore, that defendant Hansen's guilty plea to the charge of grand theft was knowing, voluntary and intelligent.

In an affidavit filed by defendant Hansen with the Superior Court, defendant asserted that he never wanted to plead guilty to anything but that he only did so because his attorney, Mr. Francone, told him that he would be put on probation and that if he would plead guilty Mr. Francone would take care of everything else. At the hearing on defendant's motion for a delayed appeal, attorney Francone denied ever having promised probation. The testimony of the two deputy public defenders who at different points in the proceedings represented the defendant, indicates that they both explained the guilty plea and its consequences in some detail, verbally and by writing notes in aid of their conversation.

■■ By holding that defendant's plea of guilty was properly accepted by the trial court, we dispose of defendant's second contention. Hansen argues that his deafness prevented him from understanding the testimony offered at his preliminary hearing and that therefore he was unable to assist counsel in his own defense. In State v. White, 102 Ariz. 18, 423 P.2d 716 (1967), we held that when an accused pleads guilty to an information, he waives any defects in the preliminary examination. We further said that the right to have a preliminary hearing is a personal privilege for the benefit of the ac-

cused and he may either expressly or impliedly waive such privilege. Defendant Hansen is precluded from challenging his preliminary hearing on appeal. His guilty plea to grand theft acted as a waiver of his right to challenge the preliminary proceedings.

Defendant's conviction of grand theft is affirmed.

STRUCKMEYER, V. C. J., and McFARLAND, J., concur.