[Crim. No. 15047. In Bank. May 27, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
KLAUS RIZER, Defendant and Appellant.

**36**

## COUNSEL

Albert D. Silverman, under appointment by the Supreme Court, for Defendant and Appellant.

Thomas C. Lynch and Evelle J. Younger, Attorneys General, William E. James, Assistant Attorney General, and Jane C. Liebman, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**MOSK, J.**—On July 30, 1969, defendant pleaded not guilty by reason of insanity to a charge of issuing a check without sufficient funds (Pen. Code, § 476a) and in a separate case he entered the same plea to a charge of assault with a caustic chemical (Pen. Code, § 244). As provided in section 1016 of the Penal Code, a defendant who pleads not guilty by reason of insanity, without also pleading not guilty, thereby admits the commission of the underlying offense. After a trial on the sanity issue by the court sitting without a jury, defendant was found to be sane at the time of the commission of the offenses charged and judgments of conviction were duly entered.[1] The sole issue on this appeal is whether defendant's pleas were constitutionally deficient under standards in effect at the time of entry.

Defendant originally pleaded not guilty to both charges. The court expressed doubt about his sanity and appointed psychiatrists to examine him. (Pen. Code, § 1368.) After hearing the medical testimony, the court found that defendant was insane and ordered him to be confined at Atascadero State Hospital. Subsequently, he was returned from Atascadero for further proceedings and counsel was appointed to represent him.

---

[1]Defendant was also charged with a prior conviction, which the court found to be true.

On July 30, 1969, defendant requested permission to change his pleas. He withdrew the pleas of not guilty and pleaded not guilty by reason of insanity to both charges.[2] The change of plea occurred after a colloquy between defendant and the trial judge which will be discussed *infra*.

The two charges were consolidated for purposes of trial, and after hearing the testimony of psychiatrists and other witnesses, the trial court found defendant to be sane at the time the offenses were committed. Defendant moved for a new trial in both actions, and his motions were denied.

On June 2, 1969, the United States Supreme Court decided *Boykin* v. *Alabama,* 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709], which held that the record must affirmatively indicate a guilty plea was voluntarily and intelligently entered and that defendant waived the rights surrendered by a guilty plea. This court, in *In re Tahl,* 1 Cal.3d 122 [81 Cal. Rptr. 577, 460 P.2d 449], decided on November 7, 1969, explicated the holding of *Boykin* and ruled that the principles set forth in *Boykin* were to be given prospective application only. As manifest by the chronology of events, defendant's change of plea, which is equated to a plea of guilty, occurred after *Boykin* was decided but prior to our decision in *Tahl.* We conclude that since the circumstances attending the entry of the plea did not meet the specifications of *Boykin,* as those requirements were reflected in *Tahl,* and defendant entered his pleas after *Boykin,* the judgments must be reversed.

In *Boykin* the petitioner pleaded guilty to five indictments charging him with robbery, and a jury sentenced him to die on each count. The petitioner did not address the court and the judge asked him no questions concerning his plea. The Supreme Court reversed the conviction on the ground that it was error for the trial judge to accept the petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary. The court held that when a guilty plea is entered the accused waives the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront his accusers, that the waiver of these three fundamental rights cannot be presumed from a silent record, and that utmost solicitude is demanded in canvassing the matter with the accused to determine whether he has a full understanding of the connotation of the plea and its consequences. A judge who fulfills that responsibility leaves a record adequate for appellate review.

---

[2]Defendant was also charged with mayhem (Pen. Code, § 203), but this charge was dismissed on the motion of the People in the interests of justice. Prior to the dismissal defendant pleaded not guilty and not guilty by reason of insanity to the mayhem charge.

*In re Tahl, supra,* 1 Cal.3d 122, decided some five months later, involved a petitioner who had entered his guilty plea prior to the *Boykin* decision. We reasoned as follows: Prior to *Boykin,* no specific language was prescribed to establish the waiver of rights and understanding of consequences attendant upon a plea of guilty, the court merely looking to the overall record and surrounding circumstances to ascertain the voluntary nature of the plea. The crucial factor was the presence of counsel at the time of the plea since, if the accused had counsel, courts generally assumed in the absence of evidence to the contrary that counsel would inform the accused of his constitutional rights and take steps to assure their protection. Judged by these pre-*Boykin* standards, the petitioner's plea in *Tahl* was voluntarily entered.

However, we concluded, *Boykin* effected a change in the law. It made clear that a plea of guilty cannot stand unless the record indicates a free and intelligent waiver of the three enumerated rights necessarily abandoned by a guilty plea and an understanding of the nature and consequences of the plea. Mere inferences, however plausibly drawn, are insufficient. Each of the three rights must be specifically and expressly enumerated for the benefit of and waived by the accused prior to acceptance of his guilty plea. This is not only a fair deduction from the *Boykin* opinion but it is the only realistic means of assuring that the judge leaves a record adequate for any review that may be sought. *Boykin* was, however, to be given prospective application only.

Defendant contends and the People concede that there was no express waiver by defendant of his right to confront witnesses against him and the colloquy set forth in the margin supports his claim.[3]

---

[3] "THE COURT: In case No. 83502, the charge is one of issuing a check without sufficient funds in violation of Section 476 (a) of the Penal Code, a felony.

"You have heard what your attorney has had to say, Mr. Hecker [alias the defendant Rizer], in regard to your wish to withdraw your present plea of not guilty to this charge and to substitute in place of the not guilty plea a plea of not guilty by reason of insanity.

"Have you fully discussed this matter with your lawyer before coming to this decision?

"DEFENDANT HECKER: Yes, sir.

"THE COURT: Do you understand what you are charged with in this case?

"DEFENDANT HECKER: Yes, sir.

"THE COURT: What do you understand the charge to be?

"DEFENDANT HECKER: That I wrote a check without sufficient funds.

"THE COURT: That would be a check in what amount, on what bank?

"DEFENDANT HECKER: I think it was $231, and the Bank of Chesterfield.

"THE COURT: In Missouri?

"DEFENDANT HECKER: Yes.

"THE COURT: And this is said to have occurred on or about April 27, 1967; is that the way you understand it?

"DEFENDANT HECKER: Yes, sir.

"THE COURT: Do you understand that if you are permitted to withdraw your plea

The People insist, however, that no direct waiver of the right to confrontation was required because defendant's pleas were entered after *Boykin* was decided but before the *Tahl* opinion, and the holding of the

of not guilty and enter a plea of not guilty by reason of insanity only that the effect of doing that would be to admit the drawing of this check without having sufficient funds?

"DEFENDANT HECKER: Yes, sir.

"THE COURT: You are under no compulsion, of course, to withdraw the present plea; you understand that?

"DEFENDANT HECKER: Yes, sir.

"THE COURT: And you are perfectly at liberty to proceed with the trial of the case on the not guilty plea on the day scheduled. You still have the right to do that if you want to.

"DEFENDANT HECKER: No, sir, I want to plead not guilty by reason of insanity.

"THE COURT: Your attorney has undoubtedly explained to you that if you proceed with the trial that you would be presumed innocent of the charge and that you could not be found guilty unless your guilt were established beyond a reasonable doubt.

"DEFENDANT HECKER: Yes, he has explained it to me.

"THE COURT: And if you were scheduled to try the case before a jury, all twelve of the jurors would have to agree on the verdict. Has that been explained to you?

"DEFENDANT HECKER: Yes, sir.

"THE COURT: If you are permitted to withdraw your plea of not guilty at this time, will you be doing that freely and voluntarily in all respects?

"DEFENDANT HECKER: Yes, sir.

"THE COURT: Have any threats been made against you, any member of your family or anyone else to induce you to want to change your plea.

"DEFENDANT HECKER: No.

"THE COURT: Have any promises of any sort been held out to you, or has it been suggested that you——

"DEFENDANT HECKER: No.

"THE COURT: ——will be dealt with more leniently or get a better break if you do this?

"DEFENDANT HECKER: No.

"THE COURT: How do you plead to the offense charged against you in Count I of the indictment in case No. 84006, namely, a violation of Section 203 of the Penal Code of California, a felony, Mr. Hecker?

"DEFENDANT HECKER: Not guilty, and not guilty by reason of insanity.

"THE COURT: All right. Now, with reference to Count II, Mr. Haney has advised the Court that it is your wish to withdraw your present plea of not guilty to that count and to substitute in place of the not guilty plea the single plea of not guilty by reason of insanity. Is that your wish?

"DEFENDANT HECKER: Yes, sir.

"THE COURT: Again, if you do this, do you understand that the effect of doing it will be to admit the act charged in Count II of the indictment?

"DEFENDANT HECKER: Yes, sir.

"THE COURT: And that act, what do you understand the charge to be in that count?

"DEFENDANT HECKER: That was throwing a chemical, a caustic chemical, in the eyes of another person.

"THE COURT: Don Lee Enlow?

"DEFENDANT HECKER: I don't know his name.

"THE COURT: That is the person who is said to be involved here.

"DEFENDANT HECKER: Yes.

"THE COURT: This is said to have taken place on or about November 22, 1968. Is that the date you have in mind that is involved in this charge?

latter case should be given prospective application only. They theorize that *Boykin* requires only that some affirmative record be made by the court to show that a guilty plea was intelligent and voluntary and they contend that such a record was made here. *Tahl,* it is asserted, set forth more stringent requirements than *Boykin* for acceptance of a guilty plea, and the additional requisites of *Tahl* should be applicable only to cases in which pleas were entered after *Tahl.*

There is no merit in this argument. First, *Boykin* specifically states that the waiver of the three enumerated rights cannot be presumed from a silent record (395 U.S. at p. 243 [23 L.Ed.2d at p. 279]) and the decision thus stands for a proposition more precise than that an affirmative record must be made merely on the issue of voluntary and knowing waiver. Indeed, it appears from the opinions therein that the petitioner in *Boykin* did not claim his plea was involuntary or made without knowledge of its consequences. Second, it is manifest from the opinion in *Tahl* that this court was not imposing requirements in addition to those set forth in *Boykin* but was merely expounding for the guidance of California trial courts the specific procedure which the holding in *Boykin* demands. It is equally clear that the exactions of *Boykin,* as explained in *Tahl,* were applicable to all pleas entered after *Boykin.*

*Tahl* recites, for example, that *Boykin* "necessitates a more precise showing on all phases of a guilty plea than mere inferences however plausibly drawn" (1 Cal.3d at p. 131), and that a fair conclusion from *Boykin* is that the three rights mentioned therein be expressly enumerated for the benefit of the accused and waived by him (p. 132). It is further specified that in the post-*Boykin* setting courts should avoid uncertainty and produce the required information for the record (p. 133) and that *Boykin* dictates new procedures which should be given prospective application to those cases in which pleas were entered after *Boykin* (p. 135).

"DEFENDANT HECKER: I suppose. I don't remember the date. I suppose that is the date.
"THE COURT: Again, you have the right to proceed to trial on this second count in the indictment before a jury. Is it set before a jury, Mr. Haney?
"MR. HANEY: Yes, your Honor, it is.
"THE COURT: But you don't want to do that, Mr. Hecker; is that correct?
"DEFENDANT HECKER: No, sir.
"THE COURT: And with reference to any threats or any promises having been made to you, if I asked you in this case all of the questions I have heretofore asked you in the other case, No. 83502, would your answers to those questions be the same?
"DEFENDANT HECKER: Yes.
"THE COURT: No threats have been made of any kind?
"DEFENDANT HECKER: No, sir.
"THE COURT: No promises have been made or inducements held out to you?
"DEFENDANT HECKER: No, sir."

We thus made it abundantly clear that prospectivity related to *Boykin*, not to *Tahl*.

Decisions of the Courts of Appeal subsequent to *Tahl* have correctly interpreted the holding of that case to apply to all guilty pleas entered after the date of *Boykin*. (*People* v. *Vick* (1970) 11 Cal.App.3d 1058, 1071 [90 Cal.Rptr. 236]; *In re Michael M.* (1970) 11 Cal.App.3d 741, 744 [89 Cal.Rptr. 718]; see also *People* v. *Jordan* (1970) 11 Cal.App.3d 597, 600 [90 Cal.Rptr. 40]; *People* v. *Gayton* (1970) 10 Cal.App.3d 178, 181 [88 Cal.Rptr. 891].)

Moreover, we would be required to conclude that the instant plea was defective even if we were to accede arguendo to the People's contention that the requirement of express waiver set forth in *Tahl* is prospective only. This follows for the reason that *Boykin* cannot be interpreted to hold merely that the record must affirmatively show a guilty plea was voluntarily and intelligently made.[4] In *Tahl* we stated that *Boykin* might

[4]Two recent United States Supreme Court decisions which refer to *Boykin* involved an issue different than in the present case. (*North Carolina* v. *Alford* (1970) 400 U.S. 25 [27 L.Ed.2d 162, 91 S.Ct. 160]; *Brady* v. *United States* (1970) 397 U.S. 742 [25 L.Ed.2d 747, 90 S.Ct. 1463].) In those cases the question was whether pleas entered prior to *Boykin* were voluntary in the light of a statute, declared unconstitutional after the entry of the pleas, which provided that the crime of kidnaping was punishable by death only if the verdict of the jury so recommended. In the course of upholding the validity of the plea in *Brady* the court stated that *Boykin* added the new element that the record must affirmatively disclose that a plea was understanding and voluntary, that knowledge by a defendant of the consequences of his plea was essential, and that the waiver of constitutional rights must be made with knowledge of likely consequences. (397 U.S. at p. 756 and fns. 4, 6 [25 L.Ed.2d at pp. 760-761 and p. 756].) In *Alford* it was said that the standard before and after *Boykin* was whether the entry of the plea represented a voluntary and intelligent choice among the alternative courses of action open to the defendant. (400 U.S. at p. 31 [27 L.Ed.2d at pp. 167-168].) These declarations by the court do not specify the manner in which the intelligent waiver of rights must be affirmatively evidenced and in no respect do they cast any doubt upon the conclusion of *Tahl*. If anything, *Alford* supports *Tahl* since the high court states that no issue of substance under *Boykin* was presented in *Alford* because the record there affirmatively showed that the defendant was aware of the consequences of his plea and the rights waived by such a plea. (400 U.S. at p. 29, fn. 3 [27 L.Ed.2d at p. 166].) The People cite cases from other jurisdictions for the proposition that *Boykin* merely requires an affirmative showing that a guilty plea was voluntarily and intelligently made. (E.g., *State* v. *Hansen* (1970) 105 Ariz. 368 [464 P.2d 960, 963-964]; *People* v. *McCullough* (1970) 45 Ill.2d 305 [259 N.E.2d 19, 21-22]; *Grass* v. *State* (Me. 1970) 263 A.2d 63, 65; *People* v. *Taylor* (1970) 383 Mich. 338 [175 N.W.2d 715, 723]; *State* v. *Wolfe* (1970) 46 Wis.2d 478 [175 N.W.2d 216, 222].) While it is true that some states appear to have loosely interpreted *Boykin* in this manner others have construed that decision as requiring a showing that the three rights enumerated therein were waived at the time the plea was entered. (E.g., *State* v. *Abodeely* (Iowa 1970) 179 N.W.2d 347, 352; *State* v. *Henderson* (1970) 255 La. 792 [232 So.2d 517, 518]; *Stocks* v. *Warden, Nevada State Prison* (Nev. 1970) 476 P.2d 469, 471; *State* v. *Guy* (1970) 81 N.M. 641 [471 P.2d 675, 677]; *Nachtigall* v. *Erickson* (S.D. 1970) 178 N.W.2d 198, 201; see *State* v. *Thomas* (Mo. 1970) 452 S.W.2d 160, 164.)

plausibly be interpreted to mean that an express showing of waiver of the three constitutional rights surrendered by a guilty plea is not required but that the waiver of these rights could be inferred from the record. However, neither we nor any persuasive authority have suggested that a general showing the plea was voluntary and intelligent would satisfy *Boykin*. We noted that the record might well support a presumption that the petitioner in *Tahl* was advised of his rights of confrontation and self-incrimination from his acknowledgment that his attorney had explained his constitutional rights to him. But, we opined, it was not necessary to determine the applicability of such a rule to the facts therein because *Boykin* necessitated a more precise showing than mere inference, no matter how plausibly drawn from the evidence, i.e., a specific and express enumeration and waiver by the accused of the three constitutional rights surrendered by a guilty plea (1 Cal.3d at pp. 130-132).

██ Here, acceptance of even the rejected alternative rationale would not validate the plea because there was no record from which we may infer that defendant was advised of the right to confront witnesses against him. The People rely upon the facts that the defendant was a man of intelligence, that he had a prior conviction, and that he had discussed the change of plea with his attorney. While these circumstances might have justified an inference that the plea was voluntarily and intelligently entered under the standards applicable prior to *Boykin*, they do not satisfy even the more tolerant alternative interpretation of *Boykin* suggested in *Tahl*.

Our conclusion is not inconsistent with *People* v. *Gallegos* (1971) 4 Cal.3d 242 [93 Cal.Rptr. 229, 481 P.2d 237] and *In re Mosley* (1970) 1 Cal.3d 913 [83 Cal.Rptr. 809, 464 P.2d 473]. In *Mosley* we held that the principles set forth in *Boykin* and *Tahl* were applicable whenever a defendant stipulated that he would submit his case on the transcript of the preliminary hearing under circumstances in which submission was tantamount to a guilty plea. However, express waiver would be required only as to stipulations made "in the future." (1 Cal.3d at p. 926, fn. 10.) The issue in *Gallegos* was whether certain proceedings which occurred in the period between the *Boykin* and *Tahl* decisions, which defendant claimed amounted to a guilty plea under *Mosley*, should be governed by the standards of *Mosley* (i.e., the express waiver required by *Boykin-Tahl*). We held that *Mosley* would be applied prospectively only. In reaching this conclusion we relied primarily on the fact that trial judges could not reasonably expect that the *Boykin-Tahl* requirements would be applied not only to guilty pleas but also to stipulations of the type discussed in *Mosley* and that *Mosley* itself, in recognition of this fact, stated that its teachings were to be applied in the future. ██ Here,

by contrast, we are not faced with a question of the type of proceeding to which *Boykin* should be applied, i.e., it is applicable in all guilty plea proceedings. Furthermore, *Tahl* (unlike *Mosley*) makes it clear that its requirements are applicable to guilty pleas accepted after *Boykin*.

Under the circumstances trial judges could reasonably have anticipated that the United States Supreme Court's decision in *Boykin* would be interpreted in the proper manner described in *Tahl*. In fact, it appears that in the state's largest court, the Los Angeles Superior Court, the approved practice prior to *Tahl* was to require a defendant who entered a guilty plea to expressly acknowledge that by doing so he waived the three constitutional rights surrendered by the plea. (See Los Angeles Superior Court Criminal Trial Judges' Benchbook, Plea of Guilty, adopted April 18, 1969.) Presumably, other courts were also following the procedures dictated by *Boykin* as expounded in *Tahl* during the comparatively brief interval between the two decisions.

In view of our conclusion that defendant's pleas of not guilty by reason of insanity were deficient, it is not necessary to discuss his additional contention that the evidence was insufficient to support the trial court's determination that he was sane at the time the offenses were committed.

The judgments are reversed.

Peters, J., Tobriner, J., and Sullivan, J., concurred.

**BURKE, J.**—I dissent. The record in this case contains sufficient facts from which we may reasonably assume that defendant voluntarily and intelligently waived his constitutional rights when he changed his plea from not guilty to not guilty by reason of insanity, as required by *Boykin* v. *Alabama*, 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709]. Although the record may not satisfy the strict requirements of *In re Tahl*, 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449], defendant's plea was entered prior to our decision in that case and should not be governed by its principles. Upon reviewing *Boykin* in the light of subsequent decisions by the United States Supreme Court it is apparent that *Tahl* went substantially further than necessary under the principles announced in *Boykin*, and that *Tahl's* continued vitality derives solely from the doctrine that this court may adopt for California more exacting standards than those minimally required by the federal Constitution. (See *In re Tahl, supra*, 1 Cal.3d 122, 132, fn. 5.)

In *Tahl*, we noted two plausible interpretations of *Boykin*, namely, (1) that it is sufficient that the record contains facts and statements from which we could reasonably assume that defendant was apprised of and

voluntarily waived his constitutional rights and intelligently pleaded guilty, or (2) that the record must show that each of the three constitutional rights mentioned in *Boykin* (self-incrimination privilege, confrontation, jury trial) were specifically and expressly enumerated for the benefit of and waved by defendant prior to acceptance of his guilty plea. (See *In re Tahl, supra,* 1 Cal.3d 122, 130-132.) In *Tahl,* we were of the view that the second, more strict interpretation of *Boykin* was the correct one.

The *Boykin* decision itself contains no express requirement that the record show that defendant was advised of, and waived, each of the constitutional rights mentioned above. *Boykin* simply held that it was error for the trial court to accept a guilty plea without ascertaining that the plea was intelligently and voluntarily given, and that on appeal the courts cannot presume waiver of these constitutional rights on the basis of a totally silent record. Moreover, cases decided by the United States Supreme Court subsequent to *Boykin* and *Tahl* indicate that we misinterpreted *Boykin* and that, in fact, the former of our two "plausible interpretations" of that case was the one intended by that court.

Thus, in *Brady* v. *United States,* 397 U.S. 742 [25 L.Ed.2d 747, 90 S.Ct. 1463], the court upheld a guilty plea as voluntarily and intelligently given since, as in the instant case, the record disclosed that defendant had been represented and advised by counsel, was aware of the charges against him, and entered his plea without compulsion, threats or promises. Nothing in *Brady* indicates that the record also showed that defendant was advised of, and expressly waived, the three constitutional rights mentioned in *Boykin,* or that *Boykin* required such a showing. In fact, the court impliedly rejected such an interpretation of *Boykin,* stating "The requirement that a plea of guilty must be intelligent and voluntary to be valid has long been recognized. . . . *The new element added in* Boykin *was the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily. . . .*" (P. 747, fn. 4 [25 L.Ed.2d p. 756]; italics added.)

To the same effect is *North Carolina* v. *Alford,* 400 U.S. 25 [27 L.Ed.2d 162, 91 S.Ct. 160], wherein defendant sought to vacate his guilty plea on the ground that it was the product of fear and coercion. The court noted that "The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. See *Boykin* v. *Alabama,* 395 U.S. 238, 242. . . ." (P. 31 [27 L.Ed.2d p. 168].) Since the record at a postconviction hearing disclosed that defendant was advised by his attorney as to his rights on a plea of guilty and as to the consequences of a guilty plea, the court found no "issue of substance" under *Boykin.* Again, there was

no indication in *Alford* that the specific rights of self-incrimination privilege, confrontation, and jury trial were enumerated for and waived by defendant prior to his plea of guilty.

*Brady* and *Alford* thus confirm that in *Tahl* this court extended *Boykin* beyond the necessary confines of that opinion. Since *Tahl's* additional requirements are not dependent upon *Boykin* but in fact extend far beyond that case, those requirements should be held inapplicable to guilty pleas entered prior to the date upon which *Tahl* was decided. (See *People* v. *Gallegos,* 4 Cal.3d 242, 247-249 [93 Cal.Rptr. 229, 481 P.2d 237].) To paraphrase *Gallegos,* not until *Tahl* could we reasonably expect trial judges to anticipate the necessity of expressly enumerating for a defendant the specific rights which he would waive by entering a plea of guilty.

Judged by *Boykin* standards, it seems to me that the record in the instant case adequately discloses that defendant voluntarily and intelligently waived his constitutional rights and changed his plea to not guilty by reason of insanity. As pointed out by the majority, defendant was represented by counsel and "fully discussed" the consequences of a changed plea with counsel, including the fact that such a plea would constitute an admission that he had committed the offenses charged, and would deprive defendant of the presumption of innocence, the proof-beyond-a-reasonable-doubt standard, and the right to a jury trial. The fact that the particular right of confrontation was not expressly mentioned in the record is thus immaterial, for we can reasonably assume that defendant realized that by admitting his guilt and foregoing a trial on that issue, he would thereby forfeit his opportunity to confront his accusers.

I would affirm the judgments.

Wright, C. J., and McComb, J., concurred.