[Crim. No. 18653. Second Dist., Div. One. Aug. 2, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN ANTHONY CATALANO, Defendant and Appellant.

## COUNSEL

Helen E. Simmons, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Larry C. King, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

LILLIE, J. — A consolidated information charged defendant with grand theft, two counts of robbery and one count of attempted robbery, and alleged a prior felony conviction (robbery). Defendant withdrew his plea of not guilty to robbery (count IV) and pleaded guilty thereto. The allegations of the prior felony and of being armed at the time of the commission of

the offense were stricken; the court found the robbery to be second degree; the remaining three counts of the information were dismissed. Defendant appeals from judgment of conviction. ■ He raises two issues—whether his plea of guilty was induced by unkept promises of the court and prosecutor, and whether there was a voluntary and intelligent waiver of his rights to a jury trial, confrontation of witnesses and protection against self-incrimination.

As to the plea of guilty, (1) all promises were complied with, (2) referral to Department 95 was not a major inducement because defendant knew that his criminal background would probably cause his exclusion from CRC and (3) defendant ultimately waived the promise of referral to Department 95. As an obvious result of prior dealings between defense counsel and the prosecutor and discussions between defendant and his counsel a bargain was made for defendant's plea of guilty to count IV (robbery) the basis of which was fully disclosed in open court and incorporated in the record; and while *People* v. *West,* 3 Cal.3d 595 [91 Cal.Rptr. 385, 477 P.2d 409],[1] had not yet been decided, the trial judge carefully made for the record a lengthy and detailed account of the terms of the plea bargain. (*People* v. *West, supra,* 3 Cal.3d 595, 610.) In exchange for his plea of guilty it was represented to defendant that the allegations that he had previously been convicted of robbery, and that at the time of the within offense he was armed with a knife and revolver would be stricken; that he would "at the time of the probation and sentence [be] referred to Department 95 under Welfare and Institutions Code 3051 to determine whether he is an addict or in danger of becoming a narcotic addict and whether or not he is otherwise eligible for the program at the California Rehabilitation Center," with the understanding that no promise was made that he would be accepted by Department 95 or referred by it to CRC, and if rejected by Department 95 he would be returned to the trial court for sentence; and that the remaining three counts would be dismissed. The record shows that all of the foregoing were complied with and, in addition, that the judge fixed the degree of the robbery at second degree.

When defense counsel advised the court that defendant desired to plead to robbery (count IV), at the outset he established the basis of the plea bargain; among other things he stated ". . . the only promise that has been made to the defendant with respect to the manner of the disposition of the count he has pled[2] guilty to is that he will be, at the time of the

---

[1]The requirement of disclosure applies only to such plea bargains as may be tendered to courts after the rendition of *People* v. *West,* 3 Cal.3d 595, 611 [91 Cal. Rptr. 385, 477 P.2d 409]. (December 3, 1970.)

[2]Notwithstanding the use of the past tense, defense counsel made this statement to the court before the plea of not guilty to count IV was actually withdrawn.

probation and sentence, *referred to Department 95 under Welfare and Institutions Code 3051, to determine whether he is an addict or in danger of becoming a narcotics addict and whether or not he is otherwise eligible for the program at the California Rehabilitation Center.* Otherwise no promises have been made; particularly, no promise has been made that he will be accepted by Department 95 and referred to the California Rehabilitation Center.

"The defendant understands this, that if he is rejected by Department 95, he will be returned to this Court for sentence and that has been explained to the defendant by myself and he understands that the People will strike the allegation of a prior and will strike the armed allegation." Asked if the foregoing was correct, defendant replied in the affirmative; thereafter both the prosecutor and the judge explained to him what the promise entailed. When the prosecutor proceeded to take defendant's plea and asked him if he understood that he was being referred to Department 95 but may not be accepted by it and if he was not he would be returned for sentence, defendant replied in the affirmative. The judge explained that CRC has certain exclusionary criteria and it may decide he is not suitable, "and of course all we are going to do is send you to 95, Department 95, and whether or not there will be a referral [to CRC], we do not know. They'll take into consideration the type of crime that you plead guilty to and they'll go into your history and see if you have had any behavior problems that they feel cannot be corrected and if you have to be watched all the time, they don't want to be bothered with you down there. You see, its not as easy to get in there as one would think so no one is guaranteeing you anything with the exception that you are going to go down to Department 95 and they are going to examine you and talk with you."

Three weeks later, at the request of defendant the judge fixed the degree of the robbery at second degree, then commented "that the probation report indicates that the defendant may be addicted to the use of narcotics or in imminent danger thereof. However, the record further indicates the defendant has suffered numerous arrests and the Court finds that because of defendant's prior record of criminality, he does not constitute a fit subject for commitment pursuant to Welfare and Institutions Code Section 3051." Upon being reminded that he had promised to refer defendant to Department 95, the judge accordingly made an order referring him thereto—"it does appear that the defendant may be addicted or by repeated use of narcotics may be in imminent danger of becoming addicted to narcotics.

"The Court doesn't make a finding as to whether he is legally eligible but the criminal proceedings will be adjourned and imposition of sentence is suspended and the matter is referred to Department 95 for hearing to

determine if the defendant is a narcotics addict or in imminent danger of becoming addicted to narcotics by reason of the repeated use. *They can make the determination whether or not he is legally eligible, too.*" (Italics added.)

Three weeks later the cause was returned from Department 95 with a statement from the district attorney that "[I]n order for [defendant] to be eligible pursuant to 3052, we must request a signed waiver pursuant to section 3052, Welfare and Institutions Code." However, the judge advised defendant that "it was understood that there wasn't going to be any statement by the Court or any stipulation by the District Attorney and all I can do . . . is, I think we should send this back [to Department 95] so he does have a hearing of some kind down there . . . ." Defendant and his counsel agreed, however, defendant said, "Well, if they don't sign that thing, then they're not going to take me again." Upon being advised by the prosecutor that he would not agree to any waiver, the judge responded "that was all explained to the defendant when we first suspended proceedings." After a brief conference between defendant and his counsel the latter told the judge that defendant was desirous of having sentence imposed. When defendant was arraigned for judgment the court again detailed the terms of the plea bargain and all of the proceedings previously had, and carefully advised him that if he was dissatisfied he should ask to withdraw his plea of guilty.[3] To this, defense counsel replied that "defendant is somewhat discouraged by the long stay in the county jail . . . but I think that the Court can appreciate the discouragement and the belief in the eventual—that is, *I think we can recognize that probably he will be excluded even if he were referred to the C.R.C. program because of the nature of the offense. . . .*

---

[3]Among other things the trial judge said: "Now, it appears that the defendant has returned and it is true that the Court did not make a determination that the defendant is both eligible and suitable for Department 95 and it is also true that the District Attorney did not concur in the recommendation that he was eligible and suitable for the proceedings under 3051 of the Welfare and Institutions Code and 3052 of the Welfare and Institutions Code.

"The defendant stated to the Court, as I remember, that he wanted to go there and if the Court would send him over there, that he would . . . he wished to plead guilty to this count IV and the Court had a long talk with him and told him that in view of his record that he probably would be found not eligible and not suitable and he was wanting to go any way and so now he is back and Department 95 wishes the court to proceed and make a request and sign a waiver by the Court and by the District Attorney so that he can get in there under 3051 and the People are not apparently disposed to do that and the Court is not disposed to do that.

"Now, if the defendant feels that he has been double-crossed, why this is up to him. I mean if he feels that his plea was taken from him by reason of promises by the Court, induced by some promise of the Court or by the District Attorney or by you, that everybody would do all they could to see that you do get in that program, if he feels that way, well then, he should say so now.

"In other words, if he feels that his plea was taken, he should ask to withdraw his plea."

That is the defendant's position. He has not stated to me that he wishes to withdraw his plea. . . . he desires that the Court pass sentence so that— some determination, something is done to get him out of the downtown county jail facility." Thereupon probation was denied and defendant was sentenced to the state prison.

Appellant's argument that the judge and the prosecutor were aware that a waiver was required by section 3051, Welfare and Institutions Code, and they should have executed the same, is beside the point. The only promise made to him relative to disposition of count IV, as set up in the record by defendant himself before he withdrew his plea of not guilty and entered his guilty plea, was that he would be referred to Department 95 for a determination (1) whether he is an addict or in danger of becoming a narcotics addict, and (2) whether he is otherwise eligible for the CRC program. Clearly this promise included no waiver and no finding of eligibility by the trial judge, only a referral to Department 95 to determine whether he is an addict and otherwise eligible; the fact that Department 95 elected not to make the determination does not support a finding that the district attorney and the judge failed to comply with their part of the bargain. Neither a finding of defendant's legal eligibility for the CRC program by the trial judge nor execution of a waiver to qualify him for commitment was contemplated by anyone, including defendant. Everyone knew that defendant had a history of substantial criminality which would preclude any reasonable expectation of acceptance by Department 95; this was conceded by defense counsel when he told the court defendant was desirous that it pass sentence rather than resubmit the matter to Department 95. Before imposing judgment and sentence, the judge afforded defendant an opportunity to withdraw his guilty plea. (*People* v. *Delles,* 69 Cal.2d 906, 910 [73 Cal.Rptr. 389, 447 P.2d 629].) However, the reply given by defense counsel indicates that defendant believed "in the eventual—that is, . . . that probably he will be excluded even if he were referred to the CRC program because of the nature of the offenses," which supports the position that the promise of referral to Department 95 was not a major inducement to his plea of guilty. It also supports the position that defendant subsequently waived the promise of referral.

Citing *Boykin* v. *Alabama,* 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709], and without supporting argument, appellant claims there was no voluntary and intelligent waiver of his rights to a jury trial, confrontation of witnesses and protection against self-incrimination. *Boykin* holds that it cannot be assumed from a silent record that a guilty plea had been voluntarily made and that the constitutional rights necessarily forfeited after such a plea—the privilege against compulsory self-incrimination and

the rights to a trial by jury and to confront one's accusers—had been freely and intelligently waived. In *Boykin* the record was silent as to any statements by the court or by defendant regarding his plea; in the instant case the judge was active "in canvassing the matter with the accused" (395 U.S. 238, 244 [23 L.Ed.2d 274, 280]) and defendant made numerous responses.

However, the type and quantum of affirmative record required to satisfy "the newly prescribed constitutional standard" is set up in *In re Tahl,* 1 Cal.3d 122, 130 [81 Cal.Rptr. 577, 460 P.2d 449],[4] in which the court interpreted *Boykin* to mean "that each of the three rights mentioned—self-incrimination, confrontation and jury trial—must be specifically and expressly enumerated for the benefit of and waived by the accused prior to acceptance of his guilty plea. . . .

"This does not require the recitation of a formula by rote or the spelling out of every detail by the trial court. It does mean that the record must contain *on its face* direct evidence that the accused was aware, or made aware, of his right to confrontation, to a jury trial, and against self-incrimination, as well as the nature of the charge and the consequences of his plea. Each must be enumerated and responses elicited from the person of the defendant." (P. 132.)

The record before us affirmatively shows from responses elicited by both the prosecutor and the trial court from defendant that he was fully aware of the nature of the charge, knew he was giving up his right to a jury trial in pleading guilty, was pleading guilty "freely and voluntarily," was aware of the consequences of his guilty plea and possible sentence and was giving up his right to a jury trial on the issue of the degree of the robbery; and freely and intelligently waived his constitutional rights.[5] He also

---

[4]Defendant's plea of guilty was entered November 3, 1969, six days before *In re Tahl* (November 7, 1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449], which was decided over five months after *Boykin. People* v. *Rizer,* 5 Cal.3d 35 [95 Cal.Rptr. 23, 484 P.2d 1367], decided May 27, 1971, holds the principles enumerated in *In re Tahl,* 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449], to be retroactive to the date on which *Boykin* v. *Alabama* was decided, June 2, 1969.

[5]After the judge in open court announced that counsel had discussed possible disposition with him in chambers and he was aware there also had been a discussion in chambers by counsel with another judge prior to being assigned to his court, defense counsel advised the judge that defendant desired to plead guilty to one count of robbery, and set out the terms of his guilty plea. The prosecutor proceeded to take the plea and questioned him at great length advising him of the nature of the charge. Thereafter the following occurred: "MR. SCHIRN: Your attorney has indicated that at this time you wish to withdraw your plea of not guilty to Count IV of consolidated Information No. A-109750, which charges you with the crime of robbery in violation of Section 211 of the Penal Code, and plead guilty. Is that what you want to do?

"THE DEFENDANT: Yes, sir.

"MR. SCHIRN: You have discussed this matter with your attorney and he has informed you of your constitutional rights; is that correct?

"THE DEFENDANT: Yes.

responded in the affirmative to the question, "You have discussed this matter [plea of guilty] with your attorney and he has informed you of your constitutional rights," and while his rights to confrontation and against self-incrimination were not specifically enumerated, it is readily apparent that in the context of the elaborate plea bargain detailed in the record he

"MR. SCHIRN: You understand that you are giving up your rights to a trial by either Court or jury and you further understand you're pleading guilty to a felony?

"THE DEFENDANT: Yes.

"MR. SCHIRN: Are you pleading guilty freely and voluntarily?

"THE DEFENDANT: Yes.

"MR. SCHIRN: No one has used any force or duress upon you or any member of your family?

"THE DEFENDANT: Yes.

"THE COURT: By that you mean that is true? No one has?

"THE DEFENDANT: That's true. No one has.

"MR. SCHIRN: You understand that the question of penalty or punishment is with the Court and other Governmental bodies and neither your attorney nor the District Attorney can tell you what your punishment might be?

"THE DEFENDANT: Yes, sir.

"MR. SCHIRN: Other than the statement made to the Court by your attorney, has anyone promised you any reward, immunity, lesser punishment, or probation for making your plea?

"THE DEFENDANT: No, sir.

"MR. SCHIRN: And you are pleading guilty to this charge because you in fact feel you are guilty and for no other reason?

"THE DEFENDANT: Yes, sir.

"MR. SCHIRN: You further understand you have a right to a jury trial to determine the degree of the robbery, which is robbery, first degree, or robbery, second degree; you understand that?

"THE DEFENDANT: (No audible response.)

"MR. SCHIRN: You understand that?

"THE DEFENDANT: Yes, sir.

"MR. SCHIRN: You understand that robbery in the first degree is punishable by five years to life in the State Prison?

"THE DEFENDANT: Yes.

"MR. SCHIRN: You understand that robbery in the second degree is punishable by one to fifteen years in the State Prison?

"THE DEFENDANT: Yes, sir.

"MR. SCHIRN: Now, do you want to have a jury trial or a Court trial to fix the degree of the robbery?

"THE DEFENDANT: Court.

"MR. SCHIRN: So you're agreeable to having the Judge fix the degree of the robbery at the time of sentence?

"THE DEFENDANT: Yes.

"MR. SCHIRN: And does Counsel join in the waiver of that particular right to a jury trial?

"MR. GORDON: Yes.

"THE COURT: And the People join in the waiver, also?

"MR. SCHIRN: We do, Your Honor.

"THE COURT: And the waiver is accepted.

"MR. SCHIRN: And one final matter.

"You understand you're being referred to Department 95 but you understand that you may not be accepted by Department 95; you understand that?

"THE DEFENDANT: Yes.

was aware that he had these rights and freely and voluntarily waived the same before his guilty plea was accepted by the court. ■ Thus, the issue, under *In re Tahl*, 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449], which requires an enumeration of his rights and an elicitation of responses from defendant (p. 132), is whether the record is sufficient to show that defendant knew of these rights and freely and voluntarily waived his privilege against compulsory self-incrimination and the right to confront one's accuser.

■ This is not the case of a routine plea of guilty as in *Boykin* and *Tahl* where the proceedings are minimal and " 'the entry of the plea is a ritual' " (*People* v. *West*, 3 Cal.3d 595, 609 [91 Cal.Rptr. 385, 477 P.2d 409]), but one in which the court and all counsel spent considerable time explaining to defendant the full import of his bargain, the guilty plea and its conditions and consequences. Even in *Tahl* it appears there well may be some situation in which less than an enumeration of his rights and elicitation of defendant's responses would be proper. Said the court therein at page 133: "Something short of this procedure *may* in a proper context, be held sufficient; on that we need not rule today." Because of the *quid pro quo* nature of the plea bargain in which advantages accrue to defendant in exchange for the constitutional rights he refrains from asserting, there appears to us to be a marked difference between a guilty plea such as that entered in *Tahl* and a guilty plea entered as a result of a bargain. One aspect of this difference is that in the context of a plea bargain the relinquishment of constitutional rights cannot, as a matter of strict analytic accuracy, be deemed a "waiver." The notion of a "waiver" as a surrender of a right which is not supported by consideration is antithetical to the essence of a plea bargain under which each side gives up something of value to it in order to obtain something it wants. The civil law distinguishes between a waiver and the bargained-for surrender of a right and applies different rules to each, and similar notions may underlie a distinction which has developed in the criminal law in the doctrine which has evolved from *People* v. *Ibarra*, 60 Cal.2d 460 [34 Cal.Rptr. 863, 386 P.2d 487], under which tactical deci-

---

"MR. SCHIRN: You understand if you are not accepted, you may be or you will be returned to this court for sentencing; do you understand that?

"THE DEFENDANT: Yes.

"MR. SCHIRN: We're ready to accept the plea, Your Honor.

"THE COURT: All right.

"MR. SCHIRN: John Anthony Catalano, do [*sic*] Count IV of consolidated Information No. A-109750, charging you with the crime of robbery, the degree to be determined at the time of probation and sentence, how do you know [*sic*] plead, guilty or not guilty?

"THE DEFENDANT: Guilty."

Thereafter both the court and defense counsel detailed for defendant the promises made for his plea of guilty and fully explained the nature of his plea.

sions of counsel are not deemed grounds for reversal, while serious omission or errors resulting from ignorance or carelessness of counsel (which are tantamount to waivers of defenses) gives rise to reversible error.

We would hesitate to stress the difference between the waiver of constitutional rights in a non-bargain situation and the surrender of those rights in the context of a plea bargain if we thought the difference to be merely semantic or formal. First, the fact that a bargain is being struck will almost necessarily focus defendant's attention on what it is he will be giving up if he pleads guilty. Surely any minimally adequate explanation to him by his counsel of the bargain which the latter has been able or hopes to be able to make will involve an assessment of the evidence likely to be introduced against him and of the probabilities that exercise of his right of confrontation and cross-examination will avail him, and will take into account the value of his right to confront his accusers in a court trial as opposed to a jury trial. Only when these factors have been analyzed can the wisdom of the proposed bargain be weighed; only when it is known, in light of these factors, how likely it is that the defendant will be convicted of the offense charged against him can it be determined that the certain conviction of a lesser offense arising from a guilty plea is in fact an advantageous bargain. Further, the fact that there is a clear choice offered between taking a risk on a conviction of a more serious offense by insisting on a full trial and accepting at the outset a conviction of a lesser crime should direct defendant's attention to the effect of his plea upon his privilege against self-incrimination. The fact that the prosecution is willing to make the bargain at all will certainly alert the defendant (in the unlikely event that his counsel has not done so) that he is being asked to give up something in return. The contrast between the cost to the prosecution in terms of time, money and the risk of losing if forced to try the case, and the certainty and ease of obtaining a conviction if defendant pleads guilty should make it clear to him that what is being asked of him is that he admit his guilt—that is, incriminate himself—rather than force the state to prove it. Second, in those situations in which a plea bargain is worth considering at all, the constitutional rights given up through a guilty plea are of only academic importance. The plea bargain by its nature is entered into where the defendant entertains relatively slight hope of acquittal. Of far more importance to such defendant, than the probably futile exercise of these rights, is the virtual certainty that his conviction will be of a lesser offense, or the allegation of a prior felony conviction will be stricken, or probation will be granted, or his sentence will be lighter, or he will receive some other form of special consideration if he pleads guilty than if he puts the state to its proof. The basic point of requiring a knowing waiver of rights where there is no bargain is precisely that the defendant may in fact be waiving some-

thing of value to him and receiving nothing in return. What is waived—or more properly surrendered—in the plea bargaining context has in the very nature of things been determined to be of scant value.

Here, as part of a plea bargain, defendant pleaded guilty to one count of robbery to (1) avoid prosecution and probable subsequent conviction on three additional counts charging robbery, grand theft and attempted robbery, and findings that the alleged prior conviction of robbery is true and that he was armed with a knife and revolver at the time of the commission of the offense; (2) afford the trial court the option of fixing the degree of the robbery at second degree and (3) obtain a referral to Department 95 under section 3051, Welfare and Institutions Code. His plea demonstrates he not only knew the nature of the violation charged and was prepared to admit each of its elements (*People* v. *West*, 3 Cal.3d 595, 612 [91 Cal.Rptr. 385, 477 P.2d 409]), but knew that he would not meet his accusers face to face since he had elected not to put the state to its proof. We think that the procedure used in connection with this particular plea of guilty, viewed in its proper context as an express plea bargain, was constitutionally adequate, and is the kind of situation contemplated by the Supreme Court in *In re Tahl*, 1 Cal.3d 122 at page 133 [81 Cal.Rptr. 577, 460 P.2d 449]. While the litany of rights against compulsory self-incrimination and to confront one's accusers and the waivers required by *Tahl* were not recited, the record leaves no doubt in our minds that defendant in fact was apprised of and knew his rights and freely and voluntarily waived the same prior to acceptance by the trial court of his guilty plea to count IV.

The judgment is affirmed.

Wood, P. J., and Thompson, J., concurred.

A petition for a rehearing was denied August 25, 1971, and appellant's petition for a hearing by the Supreme Court was denied October 6, 1971.