## WILLIAM R. SMITH *v.* DIRECTOR, PATUXENT INSTITUTION

[App. No. 42, September Term, 1971.]

*Decided September 8, 1971.*

54

The cause was argued before MORTON, ORTH and GIL-BERT, JJ.

GILBERT, J., delivered the opinion of the Court.

On July 13, 1970, the applicant's attorney, in the Circuit Court for Prince George's County, withdrew a previous plea of not guilty, and entered a plea of guilty, to robbery with a deadly weapon. The following exchange occurred:

| "THE COURT: | Smith, do you understand that in the first count of case No. 9909 you are accused of robbing with a deadly weapon George P. Day and taking from him $70 on December 3, 1969; do you understand that? |
| DEFENDANT SMITH: | Yes, sir. |
| THE COURT: | Do you understand that you have an abso- |

lute right to stand on your plea of not guilty, and that if you do, you could not be punished until the State's Attorney had produced here witnesses and other competent evidence to prove beyond a reasonable doubt that you did these acts; do you understand that?

DEFENDANT SMITH: Yes, sir.

THE COURT: Do you understand that as long as you plead not guilty you are presumed to be innocent until that presumption is overcome by evidence at a trial; do you understand that?

DEFENDANT SMITH: Yes, sir.

THE COURT: Now, do you understand that your attorney has offered to plead you guilty to this count?

DEFENDANT SMITH: Yes, sir.

THE COURT: And that if you agree in that plea and plead guilty, you will no longer be presumed to be innocent but rather you will be conclusively and forever hereafter be pre-

56

sumed to have committed these acts and to be guilty; do you understand that?

DEFENDANT SMITH: Yes, sir.

THE COURT: Do you understand that the maximum punishment for this offense is twenty years confinement in prison?

DEFENDANT SMITH: Yes, sir.

THE COURT: Do you understand that if the Court accepts your plea, it could forthwith sentence you to twenty years in prison without any further proceedings?

DEFENDANT SMITH: Yes, sir.

THE COURT: Other than such arrangements as you may have made with the State's Attorney through your counsel or directly with respect to other charges in this indictment or any other criminal matters pending, has anyone promised you anything or threatened you in any way to induce you to plead guilty?

DEFENDANT SMITH: No, sir.

THE COURT: And if I understand

> you correctly, the rea-
> son you are offering
> to plead guilty is be-
> cause you did take
> this $70 from George
> P. Day with the help
> of a deadly weapon on
> December 3, 1969?
>
> DEFENDANT SMITH: Yes, sir.
>
> THE COURT: Are you satisfied
> with the representa-
> tion that your attor-
> ney has given you up
> to this point?
>
> DEFENDANT SMITH: Yes, sir."

Trial counsel asked no questions of applicant, nor did he elaborate on the plea of guilty.

Applicant, who was 15 years old, was sentenced to 10 years imprisonment and was referred to the Patuxent Institution. The State nol prossed the other charges against the applicant.

Applicant filed a post conviction petition, in proper person, on November 5, 1970. Counsel was appointed and the petition for post conviction was subsequently amended. The amended petition asserted:

1. That the trial judge failed to effectively explain to the applicant the possible consequences of a plea of guilty in view of the fact that the applicant was subject to an evaluation at the Patuxent Institution.

2. That the applicant's trial counsel failed to advise applicant of his right to appeal the conviction.

3. That the applicant's trial counsel failed to advise the applicant of his right to appeal the waiver of jurisdiction by the Juvenile Court.

4. That the applicant's counsel failed to explain to him the right to file a motion for a new trial.

5. That the trial judge failed to properly explain to the applicant the constitutional rights he was waiving.

6. That the order of the Juvenile Court waiving jurisdiction fails for "proper form."

An evidentiary hearing was held on March 23, 1971, and it was found as a fact that applicant's trial counsel had thoroughly explained to the applicant his right of appeal of the conviction, his right of appeal of the Juvenile Waiver, and his right to make a motion for a new trial. Such a finding disposes of applicant's contentions 2, 3 and 4.

The trial court further found that the Waiver hearing before the Juvenile Court complied with the provisions of Article 26, § 70-16. We have carefully examined the transcript of the Juvenile proceeding and agree.

It has not been mandated that a trial judge is required to notify a defendant in a criminal case of his intention to refer that defendant to the Patuxent Institution. In fact, it is entirely possible that at the time the inquiry is made into the voluntariness of a plea of guilty, that the trial judge may not know that he will be so disposed at the time of sentencing. Perhaps a pre-sentence investigation or probation report will lead the trial judge to conclude that the proper disposition would be a referral to Patuxent. See *Perry v. State*, 11 Md. App. 302, 304 (1971).

We turn now to the applicant's fifth contention that the trial judge failed to properly explain to him the constitutional rights he waived. *Boykin v. Alabama*, 395 U. S. 238, 89 S. Ct. 1709, 23 L. Ed. 274 (1969), held that it is error for a trial judge to accept a plea of guilty without an affirmative showing on the record that such a plea was intelligently and voluntarily made. It is not constitutionally mandated that the trial judge should personally conduct the examination of a defendant as to the defendant's understanding of and the effect of a guilty plea. However, he should not accept the plea until there is a compliance with *Boykin*.

This Court, in *McCall v. State*, 9 Md. App. 191, 198 (1970), said:

"But while we have recognized generally that federal constitutional rights were involved in the waiver that takes place when a plea of guilty is entered, what *Boykin* did was to specify three such rights which are among those so involved. They are: (1) the privilege against compulsory self-incrimination; (2) the right to trial by jury; and (3) the right to confront one's accusers. Although other federal constitutional rights are also involved, *Boykin* made clear that if the record does not affirmatively show that a defendant had an intelligent understanding that he possessed each of these specified rights and voluntarily waived them, the acceptance of a plea of guilty would not be effective in any event."

The better practice is for the trial judge to satisfy himself that the record complies with *Boykin* and *McCall*.

An examination of the record in this case discloses that two of the *Boykin—McCall* rights are missing. At the post conviction hearing the trial court indicated it could find nothing in the transcript concerning advice relative to self-incrimination, and it is not apparent from the record that any inquiry was made of the applicant's original attorney at the hearing as to such advice, if any, being given to the applicant. This absence from the record of an affirmative showing that the applicant intelligently waived his privilege against self-incrimination, of itself, requires our granting leave to appeal. In regard to the right to a jury trial, the lower court said:

"While Judge Bowen does not necessarily use the word 'jury' trial he used the word 'trial.' This case was scheduled during a jury week, on Monday, July 13, 1970. There was a jury available to try the defendant that day. All criminal trials are in fact set for jury trials unless there is a counter indication in the fact that the defendant does not want a jury trial.

"I believe it would have been better procedure to have asked the defendant if he waived his right to a jury trial. He was advised that he was entitled to a trial that day, or a trial—not necessarily that day—and that his presumption of innocence would continue until it was overcome by evidence at a trial. The court feels that the defendant was properly advised of his right to a trial and that he effectively waived it at the hearing when the plea was accepted."

We disagree. "Trial" and "jury trial" are not synonymous.

*Black's* Law Dictionary, 3rd Ed., defines "trial" as: "The examination of a cause, civil or criminal, before a judge who has jurisdiction over it, according to the laws of the land." A "jury trial" is defined by the same source as: "A trial in which the issues of fact are to be determined by the verdict of a jury of twelve men, duly selected, impaneled, and sworn."

It has long been the practice in Maryland that a large majority of criminal cases are tried non-jury. A history of this practice is set forth by Judge Smith, for the Court of Appeals, in *State v. Zimmerman,* 261 Md. 11 (1971).

There is no showing on the record before us that the applicant was advised of his right to a jury trial and merely having a jury present in the court house, and available, is not a compliance with *Boykin* and *McCall.*

It is possible that original counsel advised the applicant fully under *Boykin* and *McCall,* and that the applicant thoroughly understood his rights, relative to a trial by jury and against self-incrimination, but we are unable to make that determination on this record. We shall, therefore, grant the applicant leave to appeal and remand the matter to the Circuit Court for Prince George's County for an evidentiary hearing to determine whether or not the applicant had been advised of his *Boykin—McCall* rights and intelligently and voluntarily waived them. A new trial shall be ordered by the trial court if it

finds as a result of the evidentiary hearing we are herein ordering that the applicant has not been afforded those rights.

> *Application for leave to appeal granted and the case remanded for further evidentiary hearing in accordance with this opinion.*