259 So.2d 557 (1972)
261 La. 315
STATE of Louisiana ex rel. Donner J. LeBLANC
v.
C. Murray HENDERSON, Warden, Louisiana State Penitentiary.
No. 51775.
Supreme Court of Louisiana.
March 8, 1972.
Dissenting Opinion March 24, 1972.
Rehearing Denied April 6, 1972.
*558 Chauppette, Genin & Mendoza, Al Jules Mendoza, for petitioner.
Jack P. F. Gremillion, Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Frank H. Langridge, Dist. Atty., John M. Mamoulides, Asst. Dist. Atty., for respondent.
SANDERS, Justice.
In this post-conviction proceeding, Donner J. LeBlanc attacked the validity of his guilty plea, under which he is now serving a six-year sentence for armed robbery in the Louisiana State Penitentiary. After an evidentiary hearing, the trial judge upheld the plea under Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). We affirm.
On December 28, 1969, a man armed with a shotgun, assisted by several accomplices, robbed the Bonanza Steak House in Jefferson Parish. Responding to a robberycall, officers from the Jefferson Parish Sheriff's Department arrived soon after the felons had fled. A short time later, the officers arrested Donner J. LeBlanc, the present petitioner, for the crime. After completing the investigation, the State jointly charged LeBlanc and three other persons with armed robbery.
Represented by appointed counsel, LeBlanc was arraigned on February 12, 1970. He entered a plea of not guilty, and the court fixed his trial for April 20, 1970. The court granted defense counsel fifteen days within which to file preliminary motions. The case was later reassigned for June 10, 1970.
On June 10, LeBlanc and his counsel arrived at the Jefferson Parish Courthouse prepared to go to trial along with his codefendants, Charles Henry Landry, Sandra Ann Brown, and Maria Rosa Holland. A jury panel had been summoned. The impending trial risked a statutory sentence of not less than 5 years and not more than 99 years, without benefit of parole, probation, or suspension of sentence.[1]
When the case was called, LeBlanc and Charles Henry Landry pleaded guilty, waived the delay for sentence, and the trial judge sentenced each of them to a term of six years in the Louisiana State Penitentiary. The State dismissed the charge against the two women defendants.
As to the plea of LeBlanc, the court minutes entered at the time recite:
"The accused LeBlanc appeared before the bar of the Court this day and this day and through attorney H. Lee withdrew his former plea of not guilty and entered a plea of guilty as charged, which plea was ordered to be recorded. Delays waived. It is ordered by the Court that the accused for his offense suffer imprisonment in the Louisiana State Penitentiary for a period of Six (6) years at hard labor. Defendant gave his age as 24 years old born November 21, 1945. Bond cancelled if any. John M. Mamoulides, Asst. Dist. Atty. Representing the State."
It is stipulated that the court reporter "did not take down any testimony or does not have a transcript of what transpired before [the] court on the day of sentence."
In this habeas corpus proceeding, filed in the trial court a year later, LeBlanc attacks his plea on the following grounds:
(1) The record made at the time of the plea does not affirmatively show that the trial judge ascertained that the defendant entered his plea intelligently and voluntarily with a full knowledge of its consequences, especially ineligibility for parole, as required by Boykin v. Alabama;
(2) Alternatively, if the court can consider the evidence taken at the post-conviction hearing, the record fails to reflect that defendant was in fact advised by the trial *559 judge of his ineligibility for parole under the armed robbery sentence.[2]
The threshold question is whether the court can consider the evidence taken in this post-conviction proceeding that reconstructs the events that took place on the day of the guilty plea. If the evidence cannot be considered, we must set aside the conviction without further inquiry. If it can be considered, additional legal issues must be resolved.
The petitioner earnestly contends that the absence of a contemporaneous verbatim record entitles him to have his conviction set aside. He asserts that evidence as to what occurred cannot substitute for the verbatim record entry. The State, on the other hand, contends that Boykin v. Alabama, supra, does not limit the plea record to the verbatim entry made at the time of the plea, but that the full record can be constructed in a later evidentiary hearing by showing what actually transpired at the time. This question was left open in our recent decision in State ex rel. Jackson v. Henderson, 260 La. 90, 255 So.2d 85 (1971).
Both the State and defense rely upon Boykin v. Alabama, supra. In that case, the state trial judge accepted a guilty plea with no on-the-record inquiry of the defendant to determine whether the plea was knowingly and voluntarily entered. On appeal, the Alabama Supreme Court affirmed the conviction. With no supporting record as to the voluntariness of the plea, the case then moved to the Supreme Court of the United States. That Court reversed the conviction, stating:
"It was error, plain on the face of the record, for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary. That error, under Alabama procedure, was properly before the court below and considered explicitly by a majority of the justices and is properly before us on review.
"A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment. See Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009. Admissibility of a confession must be based on a `reliable determination on the voluntariness issue which satisfies the constitutional rights of the defendant.' Jackson v. Denno, 378 U.S. 368, 387, 84 S.Ct. 1774, 1786, 12 L.Ed.2d 908. The requirement that the prosecution spread on the record the prerequisites of a valid waiver is no constitutional innovation. In Carnley v. Cochran, 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70, we dealt with a problem of waiver of the right to counsel, a Sixth Amendment right. We held: `Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.'"
. . . . . .
"Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653. Second, is the right to trial by jury. Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491. Third, is the right *560 to confront one's accusers. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923. We cannot presume a waiver of these three important federal rights from a silent record."
Based upon the foregoing pronouncements, several later state decisions hold that a simultaneous verbatim entry must be made of the colloquy of the trial judge, defendant, and his counsel when the guilty plea is entered. After the plea, the record is closed. In the absence of this verbatim entry, they hold that the conviction must fall. See, e. g., State v. Decker, N.D., 181 N.W.2d 746 (1970); Bishop v. Langlois, R.I., 256 A.2d 20 (1969). Under these decisions, the unfortunate lapse of a court reporter defeats the conviction, irrespective of how well the judge handles the guilty plea.
Other cases, however, hold that the affirmative showing that the plea was intelligent and voluntary may also be made by an evidentiary reconstruction of the plea proceedings when the plea is attacked. Such evidence is considered as an extension of the record. See Clark v. State, Fla., 256 So.2d 551 (1972); Bennett v. Commonwealth, Ky., 463 S.W.2d 331 (1971); Smith v. Director, Patuxent Institution, Md.App., 280 A.2d 910 (1971); Evans v. State, Ark., 471 S.W.2d 346 (1971); Grass v. State, Me., 263 A.2d 63 (1970); State v. Elledge, 81 N.M. 18, 462 P.2d 152 (1969); Hall v. State, 45 Ala.App. 252, 228 So.2d 863 (1969).
We find no theory in Boykin that criminal convictions are built upon a piece of paper that must be inked simultaneously with the plea. The significant language in Boykin on this point, we think, is that quoted from Carnley v. Cochran: "The record must show, or there must be an allegation and evidence which show . . ." The thrust of the decision is toward an affirmative showing that the plea was voluntarily and understandingly made, not toward cutting off the record or barring truth from the courtroom.[3]
In Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), the United States Supreme Court stated:
"The new element added in Boykin was the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily." 90 S.Ct. at 1468, 25 L.Ed.2d at 756, n. 4.
The Brady decision did not define "record." However, the later case of North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) made clear that the record may include testimony taken in a post-conviction proceeding. There, in testing a 1963 plea, the Court said:
"At the state court hearing on post-conviction relief, the testimony confirmed that Alford had been fully informed by his attorney as to his rights on a plea of not guilty and as to the consequences of a plea of guilty. Since the record in this case affirmatively indicates that Alford was aware of the consequences of his plea of guilty and of the rights waived by the plea, no issues of substance under Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), would be presented even if that case was held applicable to the events here in question." 91 S.Ct. at 163, 27 L.Ed.2d at 166, n. 3. (Italics ours).
When a guilty plea is attacked in a post-conviction remedy, the judicial inquiry must always be what in fact occurred. We hold, therefore, that when a complete, verbatim transcript of the plea proceeding is unavailable, competent testimony may be used to reconstruct the crucial procedure. Such testimony becomes part of the plea record. See Bennett v. Commonwealth, *561 supra; Smith v. Director, Patuxent Institution, supra; Grass v. State, supra; State v. Elledge, supra.
Mindful of our responsibility under our supervisory jurisdiction, however, we hasten to add that a contemporaneous verbatim transcript of the plea proceeding is dictated by vital considerations relating to efficiency in the administration of criminal justice. As we noted recently in State ex rel. Jackson v. Henderson, supra, a full contemporaneous record prevents the disruption of the criminal process by evidentiary hearings designed to complete the record.[4]
Having determined that the evidence taken in this post-conviction proceeding can be considered, we reconstruct the events affecting the plea of guilty.
After LeBlanc and his counsel arrived at the courthouse on the morning of the trial, they entered into discussions with the codefendants, their counsel, and the District Attorney concerning a plea of guilty. The discussion focused upon dismissing the charges against the two women. The District Attorney offered to dismiss the charges against the two women if LeBlanc and Landry pleaded guilty. There was considerable discussion about the severity of the sentence for armed robbery, a maximum of 99 years without the benefit of parole. Landry readily agreed to plead guilty in order to "cut the chicks loose", stating: "I'm guilty, let's get it over with."
LeBlanc, however, delayed his decision. Ultimately, he also decided to plead guilty with the understanding that the charges against the two women would be dismissed. The trial judge was consulted concerning the sentence. He indicated that the sentence would be six years in the penitentiary. With advance knowledge of the sentence, LeBlanc persisted in his plea decision.
The petitioner and his attorney then appeared in open court to withdraw the plea of not guilty and enter a plea of guilty. Insofar as the trial judge recalled, the normal procedure was followed. The trial judge testified:
"A. The normal procedure is to explain to the accused prior to his withdrawal of a plea and entering of a plea of guilty his right to a trial, his right to appeal if he's found guilty, and all consequences which he faces as a result of of his plea of guilty.
"Q. Normally, Your Honor, in a situation such as this, the defendant's attorney or the defendant would waive the delay for sentencing. Is there any reason to believe the delay was not waived on that date inasmuch as he was sentenced at the same time?"
"A. There is no reason to believe it was not waived and I'm sure it was."
"Q. Your Honor, in a plea of guilty, in a situation such as this, do you explain to the defendant the consequences of such a plea?
"A. Absolutely.
"Q. Sir, would you explain to him the maximum sentence he would receive under the law?
"A. No.
"Q. Would you in a situation such as this where he has pled guilty to the crime of armed robbery, would you sir explain to him the maximum, the minimum he could receive and also that he would not be entitled to probation, parole or revocation?
"A. It seems to me, Mr. Mendoza, that in view of the seriousness of this particular charge and the fact that that the man did plead guilty that I did explain to him that the six years was a sentence for which he was not entitled to any probation or parole or reduction in the term he would serve.

*562 "Q. Now I realize there are many cases that come before you. You don't remember specifically, this is your normal procedure, is that your testimony?
"A. That is correct."
After the plea was entered, the trial judge sentenced LeBlanc to a term of six years in the Louisiana State Penitentiary. The District Attorney dismissed the armed robbery charges against the two female co-defendants.
The record establishes that the plea was voluntarily entered as part of a plea bargain agreement. In court, the trial judge addressed the defendant personally, at least to confirm that it was entered voluntarily and knowingly. The State has discharged all of its commitments under the agreement. Such a conviction should be set aside only for the most compelling reasons. As the Supreme Court of the United States stated in McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), the pervasive issue is whether years later, defendants must be allowed to withdraw their guilty pleas and be given another choice between admitting their guilt and putting the State to its proof.
Petitioner's primary attack upon his guilty plea throughout this proceeding has been that the trial judge failed to advise him of his ineligibility for parole and that he was unaware that he could not be considered for early release.
The record is replete with evidence that petitioner was aware that he would have to serve the six-year sentence, without benefit of parole. The three defense attorneys testified that the petitioner knew this before he entered his plea. Petitioner's own attorney testified that the reason petitioner was reluctant to plead guilty was because he would be ineligible for parole. We find, as did the trial judge, that petitioner was aware that he would not be entitled to parole. Although the sentencing judge recalled that he had informed the defendant of his parole status, we may assume for purposes of this decision that such information was not imparted in the courtroom.
A split of authority exists as to whether ineligibility for parole is a consequence of a plea about which the trial judge must inform the defendant. Among the cases holding that such advice must be given are Harris v. United States, 6th Cir., 426 F.2d 99 (1970); Smith v. United States, 6th Cir., 400 F.2d 860 (1968); and Munich v. United States, 9th Cir., 337 F.2d 356 (1964). The petitioner relies upon these decisions.
The cases holding to the contrary include Sali v. Warden, Nevada State Prison, Nev., 482 P.2d 287 (1971); Trujillo v. United States, 5th Cir., 377 F.2d 266 (1967), cert. denied 389 U.S. 899, 88 S.Ct. 224, 19 L.Ed.2d 221; United States v. Sapp, 5th Cir., 439 F.2d 817 (1971); and Morales-Guarjardo v. United States, 5th Cir., 440 F.2d 775 (1971).[5] See also State v. Ross, 15 Ariz. App. 174, 487 P.2d 20 (1971).
Because of the special circumstances of the present case, a definitive decision between the opposing rules is not required. We hold only that when a defendant knows that the sentence imposed will be without parole, but nonetheless enters a guilty plea under a plea bargain agreement, the failure of the trial judge to inform him that the sentence is without benefit of parole does not invalidate the conviction.
Finally, in oral argument, the defendant contended that the affirmative showing was otherwise insufficient to satisfy the requirements of Boykin v. Alabama. Recently, in setting aside the conviction in State ex rel. Jackson v. Henderson, supra, we held:
"In examining the colloquy, we are impressed with the solicitude of the trial *563 judge in ascertaining the actual guilt of the accused and in ascertaining his intelligent waiver of counsel, as well as the voluntariness of his plea of guilty.
"Nevertheless, the colloquy shows that the accused was not informed of and did not waive (1) his privilege against compulsory self-incrimination, (2) his right to trial by jury, and (3) his right to confront his accusers. As we read Boykin, in taking a plea of guilty, an express and knowing waiver of at least these three federal constitutional rights must be made, which waiver cannot be presumed."
In this language, we announced no magic word formula, but did mandate that the defendant be informed of each of these three basic rights before he enters his guilty plea. In making this pronouncement, our dominant purpose was to develop adequate guidelines for the trial courts, so that the stability of criminal convictions would be free from doubt.[6]
Our decision requiring an articulation of these rights is supported by several decisions of state courts as they have applied Boykin v. Alabama to their criminal justice systems. See People v. Garner, Ill.App., 267 N.E.2d 38 (1971); People v. Rizer, 5 Cal.3d 35, 95 Cal.Rptr. 23, 484 P.2d 1367 (1971); Higby v. Sheriff of Clark County, Nev., 476 P.2d 959 (1970); State v. Abodeely, Iowa, 179 N.W.2d 347 (1970).
We now recognize that a majority of the state decisions thus far require only that the trial judge canvass the matter with the defendant to verify that the plea is freely and understandingly made. In these jurisdictions, the failure to articulate all three rights (jury trial, confrontation, and selfincrimination privilege) does not invalidate the conviction. See State v. Turner, 186 Neb. 424, 183 N.W.2d 763 (1971); Edwards v. State, 51 Wis.2d 231, 186 N.W.2d 193 (1971); State v. Piacella, 27 Ohio St.2d 92, 271 N.E.2d 852 (1971); State v. Laurino, 106 Ariz. 586, 480 P.2d 342 (1971); State v. Campbell, 107 Ariz. 348, 488 P.2d 968 (1971); Jones v. State, 207 Kan. 622, 485 P.2d 1349 (1971); Miracle v. Peyton, 211 Va. 123, 176 S.E.2d 339 (1970); Teton v. State, Wyo., 482 P.2d 123 (1971); Lockhart v. State, Ind., 274 N.E.2d 523 (1971).
See also the concurring opinion of Mr. Justice Summers in State v. Johnson, 260 La. 902, 257 So.2d 654 (1972) and the authorities therein cited.
The thrust of the foregoing decisions is that the proper standard for determining the validity of a guilty plea is whether it represents a voluntary and intelligent choice among alternative courses of action. North Carolina v. Alford, supra.[7]
Although we have been urged to relax the strict rule of State ex rel. Jackson v. Henderson, we deem it inadvisable to do so. To truncate the rule now, when the jurisprudence is still fluid, would jeopardize hundreds of future convictions, as the trial judges proceed to follow our decision. It will be time enough to tailor our rule when the state and federal jurisprudence solidifies.
In the meantime, however, we will apply the three-right articulation rule of State ex rel. Jackson v. Henderson prospectively only, that is, to guilty pleas entered *564 after December 8, 1971, the date the decision became final.[8]
The record shows that in his 1970 plea, the defendant made a voluntary and intelligent choice among available courses of action. Under his plea bargain, the defendant received a near-minimum sentence, and two of his co-defendants were set free. Neither in his petition nor testimony does he assert his innocence. If real justice is to prevail, his conviction must be maintained.
For the reasons assigned, the judgment of the district court dismissing the petition is affirmed.
McCALEB, C. J., concurs in the decree only on the basis that relator was well aware of his rights when he made the plea bargain herein. In these circumstances the recitation of the magic words set forth in Boykin v. Alabama would be wholly superfluous.
DIXON, J., dissents.
BARHAM, Justice (dissenting).
The majority opinion takes so many contradictory alternative positions that it is impossible for me to understand what it holds. I believe all would agree that the interpretation of Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), by our own court heretofore has left the trial courts in abysmal obscurity as to the constitutional requirements in accepting guilty pleas. While it appeared that our decision in State ex rel. Jackson v. Henderson, 260 La. 90, 255 So.2d 85 (1971), had brushed aside that obscurity and had sharply clarified this court's position as to the requirements of affirmative, intelligent waiver of several basic constitutional rights, the majority of this court has since vacillated, floundered, and shown expertise in retractility.
Some of the weaknesses of the majority opinion here are as follows:
The majority assumes that the court reporter is responsible for the minute record. I cannot absolve the judge from the responsibility that the minute entries accurately reflect the proceedings had in his court.
We are dealing with federal constitutional questions which are governed by the interpretations of the United States Supreme Court and the federal court system; yet the majority reaches only to state courts for support for its position, knowing full well that the vast majority of the federal decisions are to the contrary. Certainly it would seem that all legal minds would admit that the federal courts have the final right to adjudicate United States constitutional questions, and that their interpretations will prevail whether the result is palatable or not.
At the same time that the majority holds that a contemporaneous record which would support the constitutionality of the plea of guilty is not required under the jurisprudence of other states, it says categorically: "* * * we hasten to add that a contemporaneous verbatim transcript of the plea proceeding is dictated by vital considerations relating to efficiency in the administration of criminal justice." (Emphasis supplied.) I have never worried about the contemporaneous record to satisfy the Boykin requirements except for the protection of the courts, the State, the people, so that what is constitutionally accomplished may be legally protected. If Boykin demands this record, whatever we say will not countermand it.
We do not necessarily reach the question of the contemporaneous record in this case because there has been an evidentiary hearing, and the post-plea evidentiary hearing establishes that this plea was taken without *565 a knowing, voluntary waiver of the constitutional rights which the majority itself, in contradiction, later finds to be essential under Boykin. This is my major concern in dissent here and points up the other errors committed by the majority.
The majority writes at great length about the defendant's knowing the consequences of his pleai. e., how much time he was going to serve, and yet that is not the primary question before us, nor was it the question resolved by Boykin.
Let us examine only the testimony of the judge who accepted the plea. First he testified that he had no particular or special knowledge of this plea because he could not remember it. Of course that is exactly why Boykin specified a contemporaneous record, and why I have urged it in dissent over and over,[*] so that the trial judge will not have to depend upon recall to establish the nature of the proceeding had. But when the trial judge here was asked what his "normal procedure" was, he stated: "The normal procedure is to explain to the accused prior to his withdrawal of a plea and entering of a plea of guilty his right to a trial, his right to appeal if he's found guilty, and all consequences which he faces as a result of his plea of guilty." (Emphasis supplied.)
Even if we assume that Boykin would allow a post-plea hearing to cure record deficiencies, certainly it will not allow testimony of the "normal procedure" to stand as an affirmative showing that a particular defendant voluntarily and knowingly waived his constitutional rights. That's what Boykin is all abouti. e., "murky memories" cannot be used to affirmatively establish waiver of constitutional rights. Boykin requires an affirmative waiver, and the cases are legion both in federal jurisprudence and in our own which define an "affirmative" showing as actual, factual proof.
But for the purpose of pointing to the grave deficiency in this majority opinion, let us see what the "murky memory" of this trial judge supplied to cure the "silent record". The most that we can get from his reference to "normal procedure" is that perhaps one constitutional right was offered to, and waived knowingly and voluntarily by, the defendant: the right to trial by jury. The trial judge does not pretend that he explained that a guilty plea was self-incriminating, and that a guilty plea foreclosed the possibility of confrontation of accusers and witnesses. The process of taking the contemporaneous record and the post-plea record and of applying the greatest mental filtration to obtain the smallest substances which would sustain a constitutional waiver gives us not the slightest residue.
Again, the majority moves to contradiction. Relying only upon state decisions which must yield to federal jurisprudence on federal constitutional issues, it tries to justify "the failure to articulate all three rights". I need not dissect and analyze the cited cases and the concurring opinion in State v. Johnson, 260 La. 902, 257 So.2d 654, relied upon by the majority and the myriad uncited cases, for immediately after the majority applies this impossible rule to the case at hand, it states categorically that we will not relax the strict rule of State ex rel. Jackson v. Henderson, supra.
Now comes the most unfathomable legal principle in the opinion. The majority has decided to apply Boykin v. Alabama not upon its effective date, June 2, 1969, but as of December 8, 1971, when we handed down State ex rel. Jackson v. Henderson. Is it reasonable to believe that a state court can ignore and deny effect to a United States Supreme Court pronouncement until it finds it convenient or expedient to apply it to federal issues which are affected by the decision? I cannot believe that this has ever occurred before in this country. *566 We, sitting as the Supreme Court of Louisiana, attack with harsh and condemning language our state appellate courts below us for daring to deviate from, or even to question, our jurisprudence (see Pringle-Associated Mortgage Corporation v. Eanes, 254 La. 705, 226 So.2d 502, and Johnson v. St. Paul Mercury Insurance Company, 256 La. 289, 236 So.2d 216). Yet we, who under our oath must obey the supremacy clause of the United States Constitution and respond to the United States Supreme Court decisions, tell that court of final supremacy that we will act on federal issues as we see fitits pronouncements to the contrary notwithstanding.
Let me caution the trial courts and the district attorneys as well once again that regardless of what we of this court say and do, the Fifth Circuit Court of Appeals through its control of the various federal courts in this state will finally decide these issues. Since more than 90 per cent of all criminal convictions are based upon pleas of guilty, your cognizance of the federal court pronouncements will assist you in making certain that the pleas you accept and the convictions under them are not vulnerable to post-conviction attack.
I respectfully dissent.
SUMMERS, Justice (dissenting).
Although I agree that the guilty plea in this case should stand, I disagree with the rationale the Court adopts in upholding the plea.
In my view, stated at length in a concurring opinion to State v. Johnson, 260 La. 902, 257 So.2d 654 (1972), the highly technical formalisms of a guilty plea required by our decision in State ex rel. Jackson v. Henderson, 260 La. 90, 255 So.2d 85 (1971) should be abolished by overruling Jackson v. Henderson. This the Court fails to do, except that by a prospective decree it denies the application of the Jackson Case to guilty pleas entered prior to December 8, 1971, the date the Jackson Case became final. I adhere to the views expressed in State v. Johnson.[1] Moreover, I reiterate the view I expressed in State v. Ray, 259 La. 105, 249 So.2d 540 (1971), where, for the first time in this Court's history, the power was exercised to overrule a decision in an earlier case wholly prospectively and to completely deny retroactive effect to an overruling decision. This technique, for it must be called that, transcends the judicial function of the court to interpret existing laws and decide actual cases and controversies. It precipitates the judiciary into a law-making forum, infringing upon the legislative prerogative, and violating the sanctity of the tripartite character of our government. In fine, the technique is unconstitutional.
I also find it difficult to understand, if our decision in State ex rel. Jackson v. Henderson is dictated by the decision in Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), how we can decide that we shall begin to observe the mandate of Boykin only after December 8, 1971 when we are well aware of the fact that Boykin became effective in 1969. The Supremacy Clause will not permit this court to decide when a constitutional mandate will be observed.
I respectfully dissent.
NOTES
[1] See LSA-R.S. 14:64, as amended.
[2] These contentions are condensed from the three questions of law set forth in petitioner's brief. The petition for habeas corpus also alleges that the plea was entered by defendant's attorney and not by him, in violation of Article 553 of the Louisiana Code of Criminal Procedure. The record reflects that this allegation is obviously without merit. Although the defense attorney addressed the court to introduce the guilty plea, the trial judge addressed the defendant personally to authenticate the plea.
[3] Only in the rare instances when there is an overriding public interest to be served, such as deterring unconstitutional searches and seizures, has reliable and truthful evidence been judicially suppressed. See Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).
[4] See also The American Bar Association Standards Relating to Pleas of Guilty (Approved Draft, 1968), Section 1.7.
[5] The U. S. Fifth Circuit Court of Appeals has voiced misgivings about its own rule. See Sanchez v. United States, 5th Cir., 417 F.2d 494 (1969); Spradley v. United States, 5th Cir., 421 F.2d 1043 (1970).
[6] The Michigan Supreme Court has recorded the opinion that guidelines for guilty pleas cannot be developed on a case-by-case basis and has resorted to its rulemaking power in an effort to stabilize criminal convictions based on such pleas. See People v. Williams, 386 Mich. 277, 192 N.W.2d 466 (1971).
[7] "The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. See Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274, 279 (1969); Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed.2d 473, 477 (1962); Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009, 1012 (1927)." 91 S.Ct. at 164, 27 L.Ed.2d at 168.
[8] Because of our decision to apply the Jackson rule prospectfully only, we do not reach the further question as to whether the Boykin rule applies in full measure to guilty pleas entered as part of plea bargain agreements. But see Kelly v. State, Fla.App., 254 So.2d 22 (1971).
[*] See, for instance, State ex rel. Martin v. Henderson, 259 La. 707, 252 So.2d 437; State ex rel. Bakke v. Henderson, 260 La. 592, 256 So.2d 638.
[1] Most recently, in Morgan v. State, 287 A.2d 592 (Feb. 11, 1972), the Supreme Judicial Court of Maine declared:

"We agree that Boykin holds that a State Court reviewing a record appropriately before it under the system of review provided by the State would commit reversible constitutional error were it to sustain the guilty plea even though the record under review fails to reveal, over and above the formal entry of the guilty plea itself, an adequate affirmative showing of additional underlying factual information to support the conclusion that the plea was voluntarily and understandingly made."