[Crim. No. 24932. Second Dist., Div. One. Dec. 6, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
NORA MARIE VEST, Defendant and Appellant.

730

## COUNSEL

James D. Vogt, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Alan G. Novodor and Robert R. Anderson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**LILLIE, J.**—Defendant withdrew her plea of not guilty and entered a plea of guilty to counts I and IV (sale of restricted dangerous drugs [§ 11912, Health & Saf. Code]); on September 22, 1970, the proceedings were suspended and she was placed on probation for three years.[1] On August 8, 1973, defendant was found to be in violation of probation and probation was revoked; on January 22, 1974, she was sentenced to the state prison. Defendant appeals from the judgment entered January 22, 1974.

 Defendant did not appeal from order granting probation (§ 1237, subd. 1, Pen. Code; *People* v. *Howard,* 239 Cal.App.2d 75, 77 [48 Cal. Rptr. 443]) thus, inasmuch as the sole issue on this appeal concerns matters occurring prior to the order granting probation in 1970 she is estopped from claiming error with respect thereto; appellate review is restricted to the proceedings in connection with revocation of probation and sentence. (*People* v. *Chavez,* 243 Cal.App.2d 761, 763 [52 Cal.Rptr. 633]; *People* v. *Howard,* 239 Cal.App.2d 75, 77 [48 Cal.Rptr. 443]; *People* v. *Glaser,* 238 Cal.App.2d 819, 821 [48 Cal.Rptr. 427]; *People* v. *Wilkins,* 169 Cal.App.2d 27, 32 [386 P.2d 540]; see also *People* v. *Gonzales,* 68 Cal.2d 467, 470 [67 Cal.Rptr. 551, 439 P.2d 655].) Moreover, defendant has appealed from a judgment of conviction based on a plea of guilty. Examination of the record discloses neither the appropriate affidavit nor the requisite certificate of probable cause as required by section 1237.5, Penal Code. The validity of her guilty plea is the only appellate issue thus she was required to comply with the requirements of section 1237.5 (*People* v. *Ward,* 66 Cal.2d 571, 575 [58 Cal.Rptr. 313, 426 P.2d 881]). However, because of the constitutional challenge involved, and in the interest

---

[1] Counts II, III, V (sale of restricted dangerous drugs) VI and VII (possession of restricted dangerous drugs) were dismissed.

of judicial economy, we treat this appeal as a petition for writ of habeas corpus and undertake the disposition of defendant's petition on the merits. (*People* v. *McMillan,* 15 Cal.App.3d 576, 578 [93 Cal.Rptr. 296].)

■ The record on its face explicitly and directly establishes that appellant was advised of her constitutional rights to a trial by jury, of confrontation and against self-incrimination, the nature of the charges against her and the consequences of her guilty pleas, including the possible prison terms that could be imposed under the law. She concedes this and that she gave these up "freely and voluntarily," but relying on *In re Tahl,* 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449], contends that because the trial judge failed to (1) ascertain whether she was aware of "the possible legal defenses" available to her, (2) ascertain whether she understood that if the cause was tried she would be entitled to the presumption of innocence and must be proved guilty beyond a reasonable doubt and (3) advise her that if she did not wish a jury trial she had a right to a court trial, her waiver was not knowingly and intelligently made and her guilty pleas were "insufficient."[2] In connection with her first contention she argues that before a defendant can understand the nature of the charge against him he must be aware of the elements necessary to constitute the crime, what must be proved by the People to obtain a conviction, the definition of legal terms used to describe the charge and "what possible defenses . . . may exist"—in her case, she "may have" been entrapped, "may have" possessed a valid license permitting her to sell drugs, "may have" made drug sales under apparent or real authority of a state or local agency or "may have" made the sales under exigent circumstances as to negate specific intent.

■ First, the record on its face demonstrates that before defendant entered her pleas of guilty, she was well aware of the exact nature of the charges against her and her defenses, if any; it contains direct evidence that she had discussed the case with her counsel and told him "all of the facts and circumstances known" to her, and that he had sufficient time in which to discuss with her this case and "all of its ramifications" and did discuss with her "her rights, *her defenses,* and the possible consequences to her of a plea of guilty."[3]

---

[2]The trial court "having noted the responses of the defendant to the inquiry of the district attorney and also having observed her answers to the questions posed by the court" found that defendant "knowingly and willfully changed her plea to that of guilty with respect to the two counts involved with full recognition of the consequences."

[3]"MR. MILLER [deputy district attorney]: Do you know what the charges are against you in Counts I and IV.
"THE DEFENDANT: Yes.
"MR. MILLER: And what are they?

■ Second, we do not subscribe to appellant's theory that before a defendant can understand the nature of the charge he must be aware of "what possible defenses may exist." An understanding of the accusation is dependent upon the particular circumstances in each case. The matter of defenses goes more to the merits of the cause than to the nature of the charge.

■ Third, appellant has cited no authority for her argument that before a defendant can be aware of the nature of the charge in the context of *Tahl,* he must know the elements of the crime, what the People must prove to obtain a conviction, what possible defenses may exist and the definition of legal terms used in the accusation. However, it cannot be denied that the more an accused knows about the legal aspects of and

---

"THE DEFENDANT: Sales of Seconal and LSD.

"MR. MILLER: Is that what you did in this case, as far as Count I is concerned on the 14th of May in the County of Los Angeles, sell and furnish sodium secobarbital capsules to another person?

"THE DEFENDANT: Yes.

"MR. MILLER: At that time when you sold those capsules, you knew they were restricted dangerous drugs?

"THE DEFENDANT: Yes.

"MR. MILLER: And you knew what you were doing when you made the sale, right?

"THE DEFENDANT: Yes.

"MR. MILLER: And as to Count IV, is that what you did on the 26th day of May, 1970, in the County of Los Angeles, sell and furnish approximately 20 tabs of LSD?

"THE DEFENDANT: Yes.

"MR. MILLER: And at that time, you knew those tabs were LSD?

"THE DEFENDANT: Yes.

"MR. MILLER: And you knew it was a restricted dangerous drug, right?

"THE DEFENDANT: Yes."

Later the following occurred:

"MR. MILLER: Have you talked about this case with your counsel, Mr. Swank?

"THE DEFENDANT: Yes, sir.

"MR. MILLER: Have you had enough time to talk with him about your case?

"THE DEFENDANT: Yes.

"MR. MILLER: Have you told him all the facts and circumstances known to you about the case?

"THE DEFENDANT: Yes.

"· . . . . . . . . . . . . . . . .

"MR. MILLER: Mr. Swank, do you believe that you have had sufficient time to discuss this case and all of its ramifications with your client?

"MR. SWANK: I do.

"MR. MILLER: Have you discussed with her her rights, *her defenses,* and the possible consequences to her of a plea of guilty?

"MR. SWANK: I have."

the judicial procedures in his case the better he will be informed, not necessarily of the nature of the charge against him but of that which he faces if confronted with a trial of the cause. While this might be the ideal, practical considerations preclude the detailed examination and briefing on the subject urged by appellant the least of which are the inability of the average lay person charged with a crime to assimilate and fully understand such complex criminal law matters and articulate them upon examination by the court, and the necessary time involved in such inquiry and briefing whether it be done by defense counsel, the trial court or both. Thus, if a defendant must be that well informed before he can understand the nature of the charge the issue becomes one of the relative functions and responsibilities of the trial court and defense counsel in this connection.

■ *Boykin* v. *Alabama,* 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709] and its California progeny impose on the trial court the responsibility of canvassing the panoply of constitutional rights with the accused to make certain he has a full understanding of what the plea connotes and its consequences, and leaving a record adequate for any review he may later seek. (*Boykin* v. *Alabama,* 395 U.S. at pp. 243-244 [23 L.Ed.2d at pp. 279-280]; *People* v. *Rizer,* 5 Cal.3d 35, 37 [95 Cal.Rptr. 23, 484 P.2d 1367]; *In re Tahl,* 1 Cal.3d 122, 130 [81 Cal.Rptr. 577, 460 P.2d 449].) *Tahl* holds that "the record must contain *on its face* direct evidence that the accused was aware, or made aware, of his right to confrontation, to a jury trial, and against self-incrimination, as well as the nature of the charge and the consequences of his plea. Each must be enumerated and responses elicited from the person of the defendant." (P. 132.) It is sufficient if the district attorney enumerates the litany of rights and elicits the responses in open court. Actually most trial judges exercise the greatest caution and "utmost solicitude" in this connection, and at length and in great detail explain these rights to the accused and examine him concerning them as well as his understanding of the nature of the charge and the consequences of a plea of guilty, in order to satisfy themselves that in entering his plea he knowingly and intelligently and freely and voluntarily waives his constitutional rights. The holding in *Tahl* has been reiterated in numerous subsequent cases (*Mills* v. *Muncipal Court,* 10 Cal.3d 288, 291 [110 Cal.Rptr. 329, 515 P.2d 273] [misdemeanor]; *People* v. *Levey,* 8 Cal.3d 648, 653 [105 Cal.Rptr. 516, 504 P.2d 452] [submission of cause on transcript of preliminary hearing by stipulation under circumstances making it tantamount to plea of guilty]; *In re Sutherland,* 6 Cal.3d 666, 670 [100 Cal. Rptr. 129, 493 P.2d 857] [guilty plea based on plea bargain]; *People* v.

*Rizer,* 5 Cal.3d 35, 37 [95 Cal.Rptr. 23, 484 P.2d 1367] [plea of not guilty by reason of insanity]; *People* v. *Gallegos,* 4 Cal.3d 242, 247-248 [93 Cal. Rptr. 229, 481 P.2d 237] [submission of the cause]; *In re Mosley,* 1 Cal.3d 913, 926 [83 Cal.Rptr. 809, 464 P.2d 473] [submission of the cause]) and it is clear therefrom that while the record must show an enumeration of the rights involved and defendant's responses thereto, they "[do] not require the recitation of a formula by rote or the spelling out of *every detail* by the trial court." (Italics ours.) *(In re Tahl,* 1 Cal.3d 122, 132 [81 Cal.Rptr. 577, 460 P.2d 449].) ▆ Thus in the case at bench, beyond the reading of the charge to defendant and inquiries concerning whether she knows the nature and the specifics thereof, what more must the trial court ascertain from or explain to her in light of the express showing that her counsel had "sufficient time to discuss this case and all of its ramifications" with her and in fact did discuss with her "her rights, her defenses, and the possible consequences to her of a plea of guilty," and the presumption that a defendant who appears in court with his counsel and who had the opportunity to and did confer with him and discuss the facts and circumstances of the case, was properly advised by him of the various rights waived by a guilty plea and that he took steps to protect these and other rights afforded by law, as long as the court is satisfied and the record shows that the accused is aware of the nature of the charge against her? *Boykin* and *Tahl* are generally aimed at fulfilling two purposes—(1) "insuring that a defendant is aware of his constitutional rights and has voluntarily and knowingly waived them"; and (2) "insuring that an adequate record of these facts is made so as to facilitate review on appeal or collateral attack." *(Mills* v. *Municipal Court,* 10 Cal.3d 288, 305 [110 Cal.Rptr. 329, 515 P.2d 273]; *People* v. *Gallegos,* 4 Cal.3d 242, 247 [93 Cal.Rptr. 229, 481 P.2d 237]; *In re Tahl,* 1 Cal.3d 122, 134 [81 Cal.Rptr. 577, 460 P.2d 449].) In our view in the instant case both of these purposes have been accomplished in connection with the matter of defendant's awareness of the nature of the charges. *Tahl* says not "every detail" need be spelled out by the trial court and we know of no authority that imposes upon the court under the circumstances here the added responsibility of inquiring into defendant's knowledge of the details of the charge such as the legal elements of the crime, what the prosecution must prove to obtain a conviction in a given case, what possible defenses may exist (which in most cases would be entirely outside of the court's knowledge or contemplation—see *People* v. *Flores,* 38 Cal.App.3d 484, 487 [113 Cal.Rptr. 272]) and the legal definition of the terms used, and if defendant is not aware of such details, to advise him thereof. If a defendant is to be that well informed of the legal aspects of his case it would seem to be the responsibility of defense counsel to so advise him

inasmuch as only he is likely to know defendant's version of what occurred and what defenses, if any, are available to him.

This brings us to the responsibilities of defense counsel as an officer of the court and to his client. The practicalities of the situation and the fundamental right of a defendant to constitutionally adequate representation of counsel require his diligence and active participation in the full and effective preparation of his client's case. Aside from the exception in which other factors such as tactical decisions dictate a guilty plea, defendants plead guilty because, after discussing the case with their counsel, they believe they are guilty. In the normal exercise of his professional responsibilities in a criminal case, counsel thoroughly familiarizes himself with the accusation, studies the transcript of the testimony taken at the preliminary hearing, researches the law involved, discusses the case with his client and his witnesses, investigates all defenses of law and of fact and considering all of the circumstances of the case determines his client's best course bearing in mind a variety of factors such as the credibility of his client's version of what occurred, the availability of witnesses, the nature of the crime, trial strategy, public opinion, the alternatives available—jury trial, court trial, submission of the cause and plea of guilty—and the chances of acquittal or conviction. So inherent in the professional relationship between attorney and client are the foregoing that our courts have held that when a plea is entered with counsel, and it appears or can be inferred from the record that prior thereto defendant has consulted with him it is presumed, in the absence of evidence to the contrary, that counsel has informed him of the various rights which are waived by a plea of guilty (*In re Mosley,* 1 Cal.3d 913, 926 [83 Cal.Rptr. 809, 464 P.2d 473]; *In re Tahl,* 1 Cal.3d 122, 127-129 [81 Cal.Rptr. 577, 460 P.2d 499]), and has taken steps to assure their protection and to protect his other rights afforded by the law. (*People* v. *Rizer,* 5 Cal.3d 35, 38 [95 Cal.Rptr. 23, 484 P.2d 1367].)

█ The same may be said of appellant's second contention—that the trial court's failure to ascertain whether she understood that if she goes to trial she is entitled to the presumption of innocence and must be proved guilty beyond a reasonable doubt "constitutes a failure to show an intelligent waiver of right to trial by court or jury." Factually the record on its face shows that defendant was advised that the prosecution had the burden of·proving its case beyond a reasonable doubt.[4]

---

[4]Defendant was asked "Do you know that you have a right to remain silent and to require the prosecution to prove their case against you beyond a reasonable doubt?" and she answered "Yes."; asked "Do you realize that by pleading guilty, you give up this right and admit the commission of the crimes charged in Counts I and IV?," defendant answered "Yes."

■ In the same manner we dispose of appellant's last contention that she was entitled to know that she had a right to a court trial, and the trial judge's failure to advise her of such right rendered her pleas "unintelligent." In effect she suggests that in addition to a waiver of a jury trial, there should be what amounts to a waiver of a trial before the court. Such contention is founded only on her argument that she "may have" feared a jury trial because the charge of possessing and selling restricted dangerous drugs involved acts condemned by society, and she was not advised of the "alternative"—a court trial. We know of no authority requiring the court to so advise a defendant or to even examine him concerning his knowledge of such matter, but as a matter of common sense any defendant who pleads guilty to a crime knows he could have had instead of a jury trial a full trial before the court. Again we presume that her counsel told her of her alternatives and what she was entitled to by way of a trial.

■ Defendant was examined in detail concerning her rights under *Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709] and *In re Tahl,* 1 Cal.3d. 122 [81 Cal.Rptr. 577, 460 P.2d 449], and the trial judge exercised great care in insuring that defendant was aware of her constitutional rights and voluntarily and knowingly waived them, and that an adequate record of these facts was made.

The appeal is dismissed and the petition for writ of habeas corpus denied.

Wood, P. J., and Thompson, J., concurred.